## Commonwealth *against* Cuyler.
## Same *against* Agnew.

The salaries of ministers of incorporated congregations and teachers in the common schools are not taxable under the Act of 30th April 1841, or that of 11th June 1840.

ERROR to the Court of Common Pleas of *Philadelphia* county.

These were amicable actions on the case, respectively instituted by the Commonwealth against Cornelius C. Cuyler and William G. E. Agnew. In the first case the following facts were stated for the opinion of the court below:

The defendant is the pastor of the Second Presbyterian Church in the city of Philadelphia, at the annual salary of $2000. He is elected such pastor by a vote of the congregation called by the session or spirituality for the purpose, and approved by the presbytery in the manner prescribed by the constitution of the Presbyterian Church in the United States. He resides in North Mulberry ward in said city. It is also agreed that the constitution and by-laws of said church shall form a part of this case stated. The question submitted is, whether the defendant, being such pastor as aforesaid, is subject to be assessed and taxed for his said salary for the use of the Commonwealth, under the Act of the 11th of June 1840, or any other law of this Commonwealth authorizing taxation for said purpose. If he is so subject, in the opinion of the court, then judgment to be entered for the plaintiff for the amount of the tax properly chargeable on said salary of $2000; or if he is not so subject, then judgment to be entered for the defendant.

The following was the second case stated:

The defendant is a teacher in Zane-street public school, first

[Commonwealth v. Cuyler—Same v. Agnew.]

section, in the city of Philadelphia, at a salary of $1000 per annum, and as such is elected by the directors of the public schools in said city. He resides in North Mulberry ward. The question submitted is, whether the defendant, being such teacher as aforesaid, is subject to be assessed and taxed for his said salary *for the use* of the Commonwealth, under the Act of the 11th June 1840, or any other law of this Commonwealth authorizing taxation for said purpose. If he is so subject, in the opinion of the court, then judgment to be entered for the plaintiff for the amount of the tax properly chargeable on said salary of $1000, or if he be not so subject, then judgment to be entered for the defendant.

After argument, the court entered judgments for the respective defendants, on the ground that they did not hold office within the meaning of the 9th section of the Act of 30th April 1841, and were not subject to assessment and taxation for their salaries under the Act of 11th June 1840, or any other law authorizing taxation for said purpose. This writ of error was taken on behalf of the Commonwealth.

*Johnson* (Attorney-General), for the plaintiff in error, cited Act of 10th April 1826; *Commonwealth* v. *Binns*, (17 *Serg. & Rawle* 233); *Commissioners of Northumberland Co.* v. *Chapman*, (2 *Rawle* 77); 4 *Peters* 514.

*Green*, for the defendants in error, referred to the Confession of Faith, chap. xv.

The opinion of the Court was delivered by

GIBSON, C. J. — By the 9th section of the Act of 1841, which supplies the place of the one passed in the preceding year, it is provided, that " in lieu of the taxes imposed by the said Act upon salaries and emoluments of office created and held under the laws of this Commonwealth, there shall annually be assessed and collected on all salaries and emoluments of office created or held by or under the Constitution and laws of this Commonwealth, and by or under any *corporation, institution* or company incorporated by the said Commonwealth, where such salaries or emoluments exceed $200, a tax of two per cent. on every dollar of the value thereof above $200 ;" and the question on these words, in the first case, is, whether the office of a minister of an incorporated congregation is taxable by them.

What is his charge? Though it has been said, by unquestionable authority, that if a man desire the office of a bishop he desireth a good work, it is certainly not an office under a corporation. It is true, that the minister of a congregation is not merely a person employed by it. He and his family are members of it; and where it is incorporated, he is usually a corporate officer by virtue of the charter; yet his services as a corporator are not those which are

compensated by his salary as a divine; and the maintenance he receives for his ministry is consequently no part of the salary or emoluments of a corporate office.  It is not the minister, but the man, who is the corporate officer, the sacred office doing no more than to designate the individual for the civil one; and where he receives nothing for his corporate services, he receives nothing that is taxable.  As a spiritual teacher, he has a provision set apart for his support; as a temporal officer, he is an unpaid functionary, and so not within the letter or the spirit of the statute.  Were a minister's charge in this country what it frequently is elsewhere, a sinecure, with revenue and political power attached to it, the argument on the other side would be more than specious; but here, where the salary is made up of voluntary contributions by a congregation frequently too poor to give more than a pittance, and often by two or more congregations compelled by their penury to accept of alternate services, it is evident, that to tax the pastor would be to tax the flock; and to tax them for the enjoyment of public worship, would be to tax religion itself.  A tax on a salary barely sufficient to support the incumbent, would necessarily be paid by the congregation, who would have no choice but to make up the deficiency, or dispense with the offices of religion, as things too costly for their means; and thus the duty, like an impost on a luxury, might amount to a prohibition.  But take it that the congregation is able and willing to pay; still it is the party taxed. And for what?  For the enjoyment of a right guaranteed to the citizen by the Constitution, which proclaims that " all men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences."  But what would be the worth of such a right, trammelled and borne down by taxation?  Should the love of religious liberty, which led our forefathers to the shores of America, ever be quenched in the hearts of their descendants by the contests of sectarian factions, such a power of taxation might be wielded with tremendous effect by a confederation to oppress a rival; and they know little of human nature who suppose there would be no disposition to use it.  The multiplicity of the sects into which the universal church is, for wise purposes, divided, renders any such confederation improbable; yet we ought, nevertheless, to fear and resist any interference of the civil power with ecclesiastical things.  For myself, therefore, (for I have not the authority of my brethren for it), I say that it may be gravely doubted whether the Legislature would be competent to tax church privileges, were it inclined to do so; and where its competency is doubtful, we are bound to interpret its acts in a way to prevent a collision with the constitution.  That the minister's subsistence was thought to be dedicated to religious purposes, is shown by the form of the invitation or call given to him in some of the Protestant churches, which declared that they who serve at the altar ought to live by the altar; and though the expression

[Commonwealth v. Cuyler—Same v. Agnew.]

has been changed by reason of an overstrained sense of refinement, it proves that the provision for the minister is considered to belong to the things of the sanctuary; which is all that is necessary to the argument. But that the Legislature actually did not intend to exact more for Cæsar than the things that are Cæsar's, is evident from the Act of 1839, which exempts from taxation, "all churches, meeting-houses, and other places of stated religious worship, with the grounds thereto annexed; all burying-grounds belonging to any religious congregation; all universities, colleges, academies and school-houses belonging to any county, borough, or school district, incorporated, erected, endowed or established by any law of this Commonwealth; and the ground thereto annexed," not exceeding five acres. Now this shows a design to foster religion rather than to burthen it; and it would have been a strange, as well as a capricious course, to tax the spiritualities of the church, having spared its temporalities, which are legitimate subjects of taxation; and to take back with one hand what had been given with the other. And it would be equally strange to tax a minister for preaching the Gospel to an incorporated congregation, but allow him to preach it duty free to an unincorporated one.

The provisions of this last Act bear strongly on the question in the remaining case, whether the salary of a teacher in the common schools is taxable; for it would have been as whimsical as anything else imputed to the Legislature, had they spared the schoolhouse and taxed the schoolmaster, who is the main-spring of it. Besides, after the encouragement given to general education by it and the Act to appropriate a part of the public money to the formation of a common school fund, it would have been absurd to tax such an office for purposes of revenue, when the *result would* have been more conveniently and less expensively obtained by stopping a part of the public bounty at the treasury. The truth is, the words in the Act of 1840 and 1841 were used, as all sweeping words are, without stopping to measure their practical extent, but with a design to leave a sufficient breadth of margin to cover proper cases, subject to be narrowed, if need should be, by construction or subsequent legislation. Allowing them the ordinary latitude, we ought not to let them interfere with the settled policy of the State, in regard to its system of education. Notwithstanding the pressure on the treasury, which has stricken the public credit to the heart, the Legislature has not harboured a thought of directly touching the common school fund; and why impute an intent to impair it, by touching it indirectly? Still farther. A tax on salaries, disguise it as we may, is a tax on wages; and it is not to be sustained beyond the absolute and explicit mandate of the law. Property is the only legitimate subject of taxation, because the burthens laid on it are equable and proportionate to the means of bearing them; yet such is the never-failing influence of wealth, even in a democracy founded on the basis of public virtue,

[Commonwealth v. Cuyler—Same v. Agnew.]

that the richer classes of the constituency have always contrived to shift those burthens from their own shoulders to those of the feeble and defenceless. Every tax on a particular class is not only partial and unjust, but paid, for the most part, by the poor, who are borne down by the weight of numbers; and every law which taxes labour in preference to property, is not to be extended by interpretation. The salaries of the teachers in the schools have been reduced to the lowest point they will bear, by the directors; and it is not believed that it was intended to destroy the system by reducing them below it. For the preceding reasons, we are firmly persuaded that the Legislature did not design to tax the subsistence of either clergymen or schoolmasters.

Judgment in each case affirmed.