### Ex-parte Adams, 25 Miss. Rep., 883.

#### Contempt of Court.

#### HABEAS CORPUS.

The right of all courts of justice to punish, by fine and imprisonment, for contempt of their authority, is an inherent right pertaining to them, and which they would have power to exercise independent of any statute.

The judgment of a court of competent jurisdiction, acting within the scope of its jurisdiction, is binding upon all the world until its judgment has been reversed or set aside by itself or some superior tribunal having authority for that purpose.

Every order of commitment must show a previous conviction. Therefore a naked order of the court, that a person be imprisoned until he signifies his assent to answer questions to the grand jury, without showing a previous conviction for contempt, is void, and the person should be discharged from custody.

The only question in this case arose on a writ of *habeas corpus*, which was obtained by George H. Adams, to be released from imprisonment; and in his petition he alleged that he was illegally held in custody by John P. Oldham, the sheriff of Hinds county. The sheriff answered, that he held the prisoner in custody by virtue of an order made by the circuit court of Hinds county, until he signifies his assent to the court to answer questions to the grand jury of said county, or until the adjournment of said grand jury at the July term, 1852, of said court. A motion was made to discharge the prisoner.

*J. A. Guion*, for motion.

*D. C. Glenn*, attorney general, and *C. E. Hooker*, contra.

Yerger, J.:

In this case George H. Adams obtained a writ of *habeas corpus* from the Honorable Richard Barnett, returnable before me,

on a petition and affidavit, that he was illegally held in custody by John P. Oldham, the sheriff of Hinds county. In answer to the writ, the sheriff has returned that he holds the petitioner in custody by virtue of an order made by the circuit court of Hinds county, which order is in the following words: "Ordered, that George H. Adams be sent to jail, and remain there until he signifies his assent to the court to answer questions to the grand jury, or until the final adjournment of said grand jury at this term of the court."

The questions which have been argued by counsel, are of very great importance, involving, on the one hand, the right of the citizen to freedom from unlawful and arbitrary imprisonment, and on the other, the power of the courts of the country to punish by imprisonment or fine for contempts committed against them and their authority. For the state it is insisted, that as a judge, sitting to try a question on *habeas corpus*, I have no power to examine into the validity of the order of commitment, but must, upon the return made by the sheriff, remand the prisoner.

By the provisions of our statute, on the subject of *habeas corpus*, it is declared, that "whenever any person detained in custody, charged with a criminal offense, shall by himself, or some other person in his behalf, apply to the supreme court, or any circuit court of law, or court of chancery in this state, or to any judge thereof in vacation, for a writ of *habeas corpus ad subjiciendum*, shall show by affidavit or other evidence, probable cause to believe that he is detained in custody without lawful authority, it shall be the duty of the court or judge to whom said application is made, forthwith to grant the writ," etc. Hutch. Code, 999. By the fourth section of this statute, it is made the duty of the "court or judge before whom the prisoner may be brought, to proceed without delay to inquire into the cause of his imprisonment, and either discharge him, admit him to bail, or remand him into custody, as the law and the evidence shall require." Ib., 1000. The same remedy by *habeas corpus* is given by the 18th section of the statute, to "persons restrained of their liberty under any pretence whatever." By the 15th section the judge or court is prohibited from discharging any

person suffering imprisonment under lawful judgment, founded on a conviction of some criminal offense. Hutch. Code, 1002. It is contended by the district attorney, that the prisoner is lawfully imprisoned for a contempt of the authority of the court, in refusing to answer a question asked him by the grand jury. For the prisoner it is insisted that the question asked him was improper and illegal, and that he was not bound by the laws of the land to answer it.

On this branch of the case two questions arise. First, Has the circuit court power to imprison a party for contempt? Second, If so, can a party be discharged from the judgment of that court directing an imprisonment for a contempt, by a direct proceeding on *habeas corpus ?*

In regard to the first point, it may be stated, that the legislature has declared that the " circuit courts shall have power to fine and imprison any person who may be guilty of a contempt of the court while sitting, either in the presence or hearing of such court; provided, that such fine shall not exceed one hundred dollars, and no person for such contempt shall be imprisoned for a longer period than the term of the court at which the contempt shall have been committed." Hutch. Code, 737. See, also, p. 861, §§ 108, 109, which provides, that a witness who refuses to testify shall be committed to prison by the court, there to remain without bail or mainprise until he shall give evidence.

Indeed, the right of all courts of justice to punish by fine and imprisonment for contempts of their authority, is an inherent right pertaining to them, and which they should have lawful power to exercise independent of any statute. [1]

Conceiving the point indisputable, then, that the circuit court has the power to fine or imprison for contempt, I am brought to the second proposition, to wit: Can a party be discharged from the

[1] Hurd on Habeas Corpus, 412; Brass Crosby's case, 3 Wils., 183; Kearney's case, 7 Wheaton, 38; Yates' case, 4 Johns., 318; McLaughlin's case, 5 Watts & Serg., 275; Johnson v. Commonwealth, 1 Bibb, 602; *Ex-parte* Alexander, 2 Am. Law. Reg., 44; *Ex-parte* Nugent, 7 Penn. Law. Journ., 107; State v. White, T. U. P. Charlton, 123; *Ex-parte* Hickey, 4 S. & M., 749; State v. Tipton, 1 Blackf., 166; Clark v. People, 1 Breese, 266; Bickley v. Commonwealth, 1 J. J. Marshall, 575; Grist et al. v. Bowman et al., 2 Pray, 182; Matter of Smithurst, 2 Sandf., S. C., 724; Lockwood v. State, 1 Carter, 161; State v. Woodfin, 5 Iredell, 199; *Ex-parte* Williamson, 4 Am. Law Register, 27; *Ex-parte* Nugent, 1 Am. Law Journal, (N. S.,) 111.

judgment of that court directing his imprisonment for contempt by proceeding on *habeas corpus*.

There is no principle more fully established in our jurisprudence than this, to wit: The judgment of a court of competent jurisdiction, acting within the scope of its jurisdiction, is binding and conclusive upon all the world, until its judgment has been reversed or set aside by itself or by some superior tribunal having authority for that purpose. Upon an application by *habeas corpus* to discharge a party from a commitment for contempt, the only question which the judge trying the writ can ask himself is this: Did the court which made the order of commitment have jurisdiction over the party and over the subject matter? If it did not, then the judgment would be *coram non judice* and void, and the party would be entitled to his discharge. But if the objection be not that the court had no jurisdiction of the case, but acting in the bounds of its authority, it made an erroneous application in its judgment of the law, then, I conceive, that sitting as a judge to try the writ of *habeas corpus*, it would not be competent for me to enter into the inquiry, whether the judgment was erroneous or not. This principle will be found to pervade all the decisions made in this country and in England upon this subject.

In a very early case of Bross Crosby, mayor of London, (3 Wilson, 188,) which was an application to the court of common pleas for a *habeas corpus* to bring up the body of the lord mayor, who was committed for contempt by the house of commons, the writ was granted, on the return, the causes of commitment were set out. It was argued for the prisoner, that the house of commons had no authority to commit for a contempt, and if they had, that they had not used it rightly and properly, and that the causes assigned were insufficient; but the whole court was of opinion, that the house of commons could commit for a contempt, and that the court could not revise its adjudication for error. Lord Chief Justice DeGrey, on that occasion, remarked, " When the house of commons adjudged anything to be a contempt or breach of privilege, their adjudication is a conviction, and their commitment in consequence is an execution, and no court can discharge a person that is in execution by the judgment of any

other court; this court can do nothing when a person is in execution by the judgment of a court having competent jurisdiction. In such case, this court is not a court of appeals." Again, he remarked: "The court of king's bench, or common pleas, never discharged any person committed for a contempt, in not answering in the court of chancery, if the return was for a contempt. If the admiralty commits for a contempt, or one to be taken up on *excommunicato capiendo*, this court never discharges the persons committed."

In the celebrated case of Paty and others v. The Queen, occurring in the time of Queen Anne, reported in 2 Lord Raymond, 1105, being a writ of *habeas corpus*, sued out in the court of queen's bench, for their discharge from a commitment for contempt, by the house of commons, that court held that it had no authority to inquire into the sufficiency of the cause of commitment. In this case it is true, the justly distinguished Lord Holt was of opinion that parties were entitled to be liberated. But he was overruled by the other eleven judges. In remarking on this case, Lord Campbell, a jurist remarkable for his learning and ability, as well as his liberal principles, uses the following language: "Holt was carried away by excusable indignation, to hold that they were entitled to be liberated; but he was properly overruled by the other judges, on the ground that the court had no power to examine into a commitment by either house of parliament." Campbell's Lives of L. C., vol. 4, 165. It is worthy of remark, too, that the opinion of Holt, Ch. J., proceeds rather upon the ground of a want of power or jurisdiction in the house of commons, in the case before him, than an erroneous judgment and application of the law where it had unquestioned jurisdiction.

Blackstone, on this subject, has stated the rule of law in the following language: "All courts, by which I mean to include the house of parliament, and the courts of Westminster hall, can have no control in matters of contempt. The sole adjudication of contempt, and the punishment thereof, belongs exclusively, and without interfering, to each respective court. Infinite confusion and disorder would follow, if courts could, by writs of *habeas corpus*, examine and determine the contempt of others."

See case of Paty and others. This whole subject underwent a very elaborate investigation in England, in the late case of Stockdale v. Hansand, 9 Adol. & Ellis, 1 (36 E. C. L. R.), and the opinion of the judges accorded with that already announced by me, to wit : "Where a commitment for contempt is made by a court of competent jurisdiction, there is no authority to discharge the party, upon the grounds that the court erred in its judgment of the law." In the opinion of Justice Patteson, the following language was used : "When a person is committed for a contempt by the house of commons, the court cannot question the propriety of such commitment, or inquire whether the person had been guilty of contempt, in the same manner as this court cannot entertain any such question, if the commitment be by any other court having power to commit for contempt. In such instance, there is an adjudication of a court of competent authority in the particular case, and the court which is desired to interfere, not being a court of error and appeal, cannot entertain the question whether the authority has been properly exercised. Upon an application for a writ of *habeas corpus*, by a person committed by the house, the question of the powers of the house to commit, or of the due exercise of that power, is the original and primary question propounded to the court, and arises directly. Now, as soon as it appears that the house has committed the person for a cause within their jurisdiction, as, for instance, for a contempt, so adjudged to be by them, the matter has passed *in rem adjudicatam*, and the court before which the party is brought by *habeas corpus* must remand him."

Similar language was used by the other judges. Such, then, is the rule established by the English courts on this question. Have the courts in the United States varied the rule ? Upon as full an examination as I have been able to give this question since it was submitted to me, I cannot find that they have.

In New York, in the case of J. V. N. Bates, 4 Johns. R., 318, the rule was laid down as it had been by the English judges. In the opinion in the case of Kent, Ch. J., he reviewed the English cases, and remarked, that " there was not an instance in the English law of a judge in vacation undertaking to decide upon the legality of a commitment in execution by

the judgment of any court of record, and much less of a court of the highest degree." He even extended the rule so far as to hold, that if, upon the return of a writ of *habeas corpus*, awarded in vacation, it appears that the prisoner stands committed by a judgment of a court of record or other court of competent authority, the judge is bound immediately to remand the prisoner, and he has no power to examine and decide touching the legality of the judgment or the jurisdiction of the court. These questions belong to the cognizance of the supreme court, as possessing general appellate powers, and as having supreme control of all inferior courts. While I most respectfully dissent from one position taken by the chief justice, to wit, that a judge, on trying the *habeas corpus*, " cannot examine the jurisdiction of the court," yet I feel confident that the other position is fully sustained by the law, to wit, " If the jurisdiction be admitted, the judge has no power to decide touching the legality of the judgment, or whether it be erroneous or not." In relation to a judgment made by a court without jurisdiction, the chief justice stated in the same opinion, that " a proceeding without jurisdiction is void and a mere nullity."

The power to discharge on *habeas corpus* from a commitment for contempt, came up before the supreme court of the United States, in *Ex-parte* Kearney, 7 Wheaton's R., 43, and in that distinguished tribunal where Story then held a seat, and John Marshall presided, it was unanimously held, Judge Story delivering the opinion of the court, that a " writ of *habeas corpus* is not deemed a proper remedy where a party was committed for a contempt by a court of competent jurisdiction, and, if granted, the court could not inquire into the sufficiency of the cause of commitment, and they are bound to remand the party unless they were prepared to abandon the whole doctrine, so reasonable, just and convenient, which has hitherto regulated this important subject." The law has been ruled in the same way in Indiana, in Kentucky, in Georgia and in Tennessee. 1 Breese, 266 ; 1 Black, 166 ; 1 J. J. Marsh, 575 ; Charlton, R., 136 ; 5 Yerger.

The argument has been pressed very earnestly, that unless the power to discharge on *habeas corpus* exists, an arbitrary and

irresponsible power may exist in the courts of the country by which the rights and liberties of the citizens may be taken away without remedy. The same argument was used before the supreme court of the United States, in *Ex-parte* Kearney, before referred to. But that court replied, " where the law is clear, this argument can be of no avail, and it will probably be found that there are also serious inconveniences on the other side. Wherever power is lodged it may be abused. But this forms no solid objection against its exercise; confidence must be reposed somewhere, and if there should be an abuse, it will be a public grievance, for which a remedy may be applied by the legislature, and it is not to be devised by courts of justice."

In the decision made by Judge Thatcher, in *Ex-parte* Hickey, 4 S. & M., 751, I do not find any thing which conflicts with the view of the law taken by me in that case. Judge Thatcher discharged Hickey, among other reasons, upon the ground that the circuit court had no power or jurisdiction to commit for contempts not committed in the presence of the court. The power to commit in that case was denied, but, I apprehend, if the power had been admitted, the judge would not have decided that he had any right to examine whether it had been erroneously exercised or not. Indeed, I think the power to discharge on *habeas corpus* from a commitment for contempt, ordered by a court of competent jurisdiction, is expressly taken away by the *habeas corpus* act itself, which, among other things declares, that a person shall not be discharged out of prison who is suffering imprisonment under lawful judgment, founded on a conviction of some criminal offense. Hutch. Code, 1002.

It would not be pretended, if the petitioner had been convicted by the verdict of a jury of a misdemeanor, and sentenced by the court to imprisonment therefor, that I could discharge him, on the ground that erroneous and improper charges were given by the court, or that illegal and improper evidence was admitted against him; every person would admit that I could not enter at all into such an investigation, and it could only be done by an appellate court. Yet the supreme court of the United States declares there is no distinction, in principle, between that case and a judgment of imprisonment against a party for contempt,

for when a court commits a party for contempt, their adjudication is a conviction, and their commitment in consequence is execution. *Ex-parte* Kearney, 7 Wheat., 43. If, then, it should appear from the return to a writ of *habeas corpus*, that the party was imprisoned by the judgment of a court of competent jurisdiction, for a contempt committed in its presence, I would feel precluded by the statute from discharging the prisoner.

It is true, the high court of errors and appeals has held that on a writ of error and *supersedeas* being awarded in a criminal case not capital, they may admit the prisoner to bail, to appear and abide the judgment of the appellate court. Whether a writ of error would lie from a judgment of imprisonment for contempt in this state, has never been decided. In some states it has been held, that a writ of error would lie. In others, that it would not. Should it be held, that it would lie in this state, I presume the party would be bailable till trial and judgment, as in other cases of criminal convictions.

From a review of the law applicable to this case, I am satisfied, if it appeared from the return that the prisoner was imprisoned by the judgment of the circuit court of Hinds county, for a contempt of the authority of that court, that I could not enter into an examination in this proceeding, whether the questions asked the witness, and refused by him to be answered, were legal or not. I think that would be a question which could only be received, if it could be received at all, by an appellate tribunal, and I would therefore be bound to remand the prisoner. But the return set out in this case is, in my opinion, insufficient to justify his imprisonment. It does not appear from that return that there has been any conviction or judgment of the circuit court of Hinds county, that Mr. Adams was guilty of a contempt. The order set out is, that "George H. Adams be sent to jail, and remain there until he signifies his assent to the court to answer questions to the grand jury," etc. It was formerly held, that a judgment for contempt, which did not set out the particular case on which it was founded, was a nullity, and that a party was entitled to be discharged from it. But the more recent cases laid down the rule, that the judgment will be sufficient, if it express on its face that it was for a con-

tempt generally, and that the specific cause need not be set out. Iredell, R., 36 ; E. C. L. R., 1.

But it is clear, that a general order to imprison a party, unless he has been convicted either by a jury or by the court, is a mere nullity. The law requires, that, before a sentence of imprisonment shall be passed against a party, he should be first convicted of an offense. In ordinary cases this conviction must be by the verdict of a jury. In cases of contempt, it may be by the judgment of the court. Still, in either case, the record must show a conviction. Now, it will be seen from this return, that there is no judgment of imprisonment for a contempt generally, or for a contempt in refusing to answer questions. There is not any conviction or adjudication by the court, that Mr. Adams had been guilty of a contempt. Without such judgment, the court had no right to commit him to prison, nor the sheriff to detain him. It is true, and was admitted on the argument, that Mr. Adams did refuse to answer questions asked by the grand jury, and it may be true, that the court considered that a contempt for which he deserved imprisonment, but no such judgment has been rendered in the case, and however many contempts the prisoner may have committed, it is not lawful to imprison him until convicted thereof by the judgment of the court, which judgment and conviction must appear by the record. For this reason, I direct that he be discharged from custody.