## IN RE BELLE HARRIS.

CONTEMPT OF WITNESS BEFORE GRAND JURY.—A witness declined to answer certain material and proper questions before the grand jury, and when brought into court again declined to answer, assigning no reason therefor, and was ordered to pay a fine and to stand committed until she should appear and answer said questions, or until the further order of the court; *held* on *habeas corpus*, that the warrant of commitment containing such an order was sufficient.

ID.—RECESS OF GRAND JURY.—Such warrant of commitment was not nullified and imprisonment thereunder did not become illegal because the Grand Jury took a recess of over three months, but not having been discharged.

Original application for a writ of *habeas corpus*.

*Mr. Scipo A. Kenner, Mr. Arthur Brown and Mr. Samuel A. Merritt*, for petitioner.

*Mr. Zera Snow*, contra.

TWISS, J.:

This is an application on the part of Belle Harris to this court for a writ of *habeas corpus*.

The plaintiff in her application alleges that she is illegally restrained and imprisoned by the United States marshal for this territory and annexes to her petition and makes part thereof the order or judgment of the court, and the warrant of commitment, under and by virtue of which she is imprisoned, from which it appears that the applicant was a witness before the grand jury, and being duly sworn refused to answer a certain question put to her by the grand jury; that thereupon the grand jury made a report verified by the affidavit of its foreman, of the fact that such question was put, and of the refusal of the witness to answer it, and of other relative facts. The report shows, among other things, that in course of an investigation of a case against a person charged of having committed the crime of polygamy, and of being married to the witness Belle Harris, as his second wife, and after evidence had been received and heard by them establishing that such person so charged was then and had been married for more than ten years to a woman other than to the witness Belle Harris, the following question was put to the witness by the grand jury: "Were you ever married, and if so to whom were you married and when?" that the witness refused to answer the question, or to give any testimony thereon; "that the only reason assigned by said witness for such refusal is that her marriage is a matter of which the grand jury has no concern and that such question is improper," and they further say, "that it is necessary that such investigation of such matter be had, and respectfully submit to the court if such question be one which it is proper to be asked of said witness, and if so, that this honorable court will take such steps as the law requires to compel said witness to answer the same."

The said Belle Harris was then present in court. The record proceeds as follows: "And thereupon the court asked said Belle Harris if she is a witness in attendance before said grand jury, to which she said she answered yes. The court then read to her from said report the question therein contained, and by the grand jury put to her as follows: "Were you ever married? If so to whom were you married, and when?" and then asked her if that

question was asked of her by the grand jury or any member thereof while she was such witness before the grand jury and in their room, to which question so put to her by the court she replied, "Yes," and the court then asked of her if she as such witness still refused to answer the question, to which she replied, "Yes." Then the court informed her that it was a proper question, and that it was her duty as a witness before the grand jury to answer the question, and asked her if she could answer the question and if she would go into the grand jury room and answer it, to which she replied: "I will not answer it;" all of which questions by the court and the answers thereto by the said Belle Harris, were in open court, and in the presence of the grand jury.

"Therefore it satisfactorily appearing to the court from said report, and the replies of said witness in answer to the questions of the court in relation to said report, that said Belle Harris has been duly summoned as a witness to appear before said grand jury, and has appeared, and that said question was asked said witness, and that she refused to give answer thereto; and it also appearing to the court from the answers of the said Belle Harris to the questions put to her by the court that she would not return to the grand jury room, and answer the question theretofore put to her by the grand jury, and that all the statement of facts set out in said report is true; and that said question was a legal and proper question to be asked of, and answered by her; and it now appearing to the court that the said Belle Harris can answer, but wilfully refuses to answer said question without lawful reason therefore, it is ordered and adjudged by the court that said Belle Harris by reason of her refusal to answer said question, and also by reason of her assertion that she would not go before the grand jury and answer said question, be and is hereby guilty of a wilful contempt of court, and it is therefore ordered and adjudged that said Belle Harris pay a fine of twenty-five dollars, and that she be imprisoned until she shall appear before the said grand jury and answer said question, or until further order of this court; and it is further ordered that the U. S. marshal forthwith take the said Belle Har-

ris into his custody and that a commitment be issued herein accordingly."

A commitment in compliance with the order and judgment of the court was duly issued, dated May 10, 1883, under and by virtue of which the U. S. marshal committed the witness to prison.

On the 15th day of May the grand jury appeared before the court and by the foreman thereof made oral report "that they had disposed of all the business that had been brought before them, except a case wherein Belle Harris had been summoned as a witness, and that by reason of her refusal to answer a question proposed to her by the grand jury, the case was not further investigated or examined by the grand jury, and therefore it is unfinished, and that he, the foreman, asked the court that the said Belle Harris be brought into court and asked again by the court the same question, to-wit: "Were you ever married; if so, to whom and when?" and request her to answer it; and said Belle Harris being called into court, the court informed her that it was about to excuse the grand jury from service until the 29th day of August next, at which time they would again convene for the transaction of such business as might properly come before them, and then asked her if she would go into the room with the grand jury and before them answer the said question heretofore put to her by the grand jury, whereupon she replied to the court that she would not answer the question. Thereupon the court ordered that she continue to be in and remain in the custody of the U. S. marshal under the commitment heretofore issued herein, and it is further ordered that the grand jury be excused until the 29th day of August next at 2 o'clock p. m."

The evidence of the first marriage being established as a fact, to the satisfaction of the jury, this question was competent and material, one which under the rules of law and evidence the witness was required to answer. *Miles* v. *United States*, 103 U. S. 313. And the action of the grand jury in reporting the facts to the court verified by the affidavit of their foreman was eminently proper; which, with the appearance of the witness at the time, put the

whole matter at once in the immediate presence and scrutiny of the court. The reasons given by the witness for not answering the question in the room of the grand jury were puerile, and simply an attempt to make an excuse for refusing to answer; and being without excuse she was in contempt, *Ex Parte Adams*, 25 Miss. 883; and her assertion to the court that she would not answer the question was contempt in the face of the court, which the court in furtherance of the public welfare, in sustaining its own dignity in the impartial administration of law and justice, was required not only to notice, but to punish. *The People ex rel. Hackley* v. *Kelley*, 24 N. Y. 74, Comp. Laws. par. 1069-1684.

Without such power or with it not enforced, courts in the administration of law are failures. The power of courts to protect themselves from insult, to enforce their authority, to repress disorders and to punish intentional offenders is inherent. *State* v. *Matthews*, 37 N. H. 450. Without this power no court can exist and be of any public utility. It is a power necessarily implied from the nature of a court of justice as being "necessary to the exercise of all others." *United States* v. *Hudson, et al.* 7 Cranch 32.

If a witness, duly summoned before a grand jury, can, with impunity, refuse to be sworn, or to answer legally competent questions, necessary to a proper investigation of the case before them, then the indicting of persons guilty of crimes will usually depend upon the willingness of the witness to state the facts of the case, and the law will give but little security to life or property.

It is claimed by the counsel for the petitioner that, under Section 867 of the Habeas Corpus Act, the imprisonment of the petitioner is illegal, because the court and the grand jury were adjourned from May 15th to August 29th, and that, during this interval, it was out of the power of the witness to answer the question or to purge herself of contempt. The section relied upon is as follows: "When the contempt consists in the omission to do an act which is yet in the power of the person to perform he may be imprisoned until he have performed it, or until released

by the court; and in that case the act shall be specified in the warrant of commitment."

The record shows that, on the 15th day of May, upon the oral report and request of the grand jury, the court ordered the witness Belle Harris to be brought into court, where she was told by the court that the court was about to adjourn to the 29th day of August, and that it was about to excuse the grand jury until that time, and then asked her if she would go into the room of the grand jury and answer the question theretofore put to her, which question the court then repeated to her, to which she replied she would not answer the question.

By this action on the part of the court the witness was fully informed of the intention of the court to adjourn to, and to excuse the grand jury, until the 29th day of August; and ample opportunity was given her to comply with the direction of the court, to answer the question, which she rejected, choosing, with full knowledge of all the facts, to resist the law and remain in prison, rather than to comply with the law and answer the question. At this time she had, so to speak, the key to her prison in her hand, but choose to remain in criminal disobedience of the law, in contempt and in prison, rather than to obey the law, and to be restored to her liberty. Her statement that she would not answer the question was in defiance of the law and the powers of the court; and the statement of her counsel that, pending the adjournment, she had no opportunity to answer the question and purge herself of contempt, has but little force unaccompanied by any suggestion from them, or intimation from herself, of a desire or a willingness to answer. After an imprisonment of five days, with a knowledge that the court and grand jury were about to adjourn until the 29th day of August, her opportunity of answering the question, and her assertion that she would not answer it, was an omission to perform an act which was then in her power to perform, and a refusal to perform it, under the section relied upon by counsel, authorized the court to order her to be imprisoned until she should perform it, or until the grand jury should be discharged,

when it would be out of her power to purge herself of the contempt. Should she, before the sitting of the adjourned term of court, communicate to the judge of the second district court a desire or willingness to answer the question, a question would then arise which this court is not called upon to decide.

It is claimed that the judgment and warrant of the court were illegal, uncertain and indefinite, because no punishment is fixed for a failure to pay the fine of $25.00, and also adjudging her to be imprisoned until the further order of the court, that the court had no authority to imprison her for more than five days.

Section 471 of the Habeas Corpus Act provides, in cases of contempt, that punishment shall be by fine or imprisonment or both, and limits the fine to $200.00, and the imprisonment to five days, except as provided in Section 467, which authorizes the court, when the contempt consists in the omission to perform, to imprison such person until he have performed it, or until released by the court.

The judgment of the court was, in our opinion, in harmony with the provisions of both sections, and did not exceed the power of the court. The counsel on both sides have presented this case in their briefs and arguments as one solely under the common and territorial law, and therefore we have made no examination of the Federal statutes, but have confined ourselves to the law under which it is submitted, and express no opinion as to what the effect of the United States statutes would be if applied to the facts of the case.

Let the petitioner be remanded into the custody of the U. S. marshal.

Emerson, J., concurred.

Zane, C. J., took no part in the decision, the cause having been argued before his incumbency.