## Commonwealth, to use, v. Turri.

Before Brownson, P. J., and Cummins, J.

*Joseph J. Benedict*, for plaintiffs; *Witherspoon & Devore*, for defendant.

BROWNSON, P. J., Jan. 28, 1929.—In this suit, brought upon a forfeited recognizance in a criminal case, the legal plaintiff is the Commonwealth, and two use-plaintiffs are named—Catherine Bautz appearing by her next friend, A. J. Bautz, and A. J. Bautz appearing in his own right. These two use-plaintiffs apparently are claiming the whole of the recognizance moneys, whereas the county in which the forfeiture took place probably has a claim also for a part of those moneys; but this situation does not affect the regularity of the proceeding, and is not an obstacle to the entry of a judgment against the defendant, because in such a case, upon collection of the moneys by execution, they will have to be brought before the court for distribution, and, under the statute governing cases of this kind, the court must then ascertain who may be entitled to share in such distribution and the amounts of their respective claims, so that "the designation of the plaintiff is not material in this issue," *i. e.*, for the purposes of the issue as to whether the recognizor owes the moneys for which the recognizance was given to the legal plaintiff, the Commonwealth: Com. *v.* Balsamo, 72 Pa. Superior Ct. 182.

The only other question raised by the motion to strike off the amended statement of claim that requires any remark is whether sections 25 and 26 of the Act of July 30, 1842, P. L. 449, have been repealed by the Act of May 18, 1911, P. L. 309. Those sections regulate the procedure and practice in the matter of the collection of forfeited recognizances given in criminal cases, and the distribution of the recognizance moneys when collected.

The Act of May 18, 1911, established a code for the regulation and government of the public school system of the Commonwealth. It is entitled "An act to establish a public school system in the Commonwealth of Pennsylvania, together with the provisions by which it shall be administered, and prescribing penalties for the violation thereof; providing revenue to establish and maintain the same, and the method of collecting such revenue, and repealing all laws, general, special or local, or any parts thereof, that are or may be inconsistent therewith." At the end of the statute appears a "repealing clause," in which is listed, among those repealed, the Act of July 30, 1842, by giving its title and date and a reference to the page in the Pamphlet Laws

where it is printed. No particular section or sections of the Act of 1842 are mentioned, and the words in which the Act of 1842 is mentioned would, when considered alone and by themselves, indicate an intent to repeal the entire act.

We have no doubt, however, that this was not the actual intention of the legislature, as manifested by the act when considered as a whole. The occasion and purpose of this repealing clause, and the reason which led to its enactment, are stated in words which appear at the beginning and the close thereof, as follows:

"This Act of Assembly is intended as an entire and complete School Code for the public school system in this Commonwealth, hereby established in every school district therein, and the following acts, or parts of acts, to wit [then listing them]. Together with any and all other Acts of Assembly, general, special or local, or parts thereof, that are in any way in conflict or inconsistent with this act, or any part thereof, shall, at the time of the taking effect of this act, be and the same are hereby repealed."

The purpose of the repealing clause, as thus clearly manifested therein, is to do away with all acts or parts of acts inconsistent with or supplied by the regulations established by the new School Code, and the same purpose is shown in the title. This being so, we think it plain that there was no actual legislative intent to interfere with any prior enactments having no connection with and not germane to the public school system, or to affect prior statutes, in so far as they deal with matters not within the scope of the Act of 1911 and are not inconsistent with its provisions. A part of the Act of 1842 (being the only part the subject-matter whereof is mentioned in its title) deals with education, but sections 25 and 26 are part of the system of laws regulating criminal procedure, providing the method of enforcing and collecting forfeited recognizances in all criminal cases. The Act of 1911 contains no provisions respecting the enforcement of such recognizances, even those given in prosecutions for the new offenses which that act creates, and there is absolutely no inconsistency between these two sections and any part of the Act of 1911. Moreover, the prosecution, in the course of which this recognizance was given, was for an offense having no relation whatever to the public school system. Notwithstanding the fact that the repealing clause mentions no particular sections, but only the act as an act, whereas in the case of some other statutes particular sections are specified, we believe that a repeal of the sections in question, so as to prevent them from continuing to regulate cases like the present one, is not within the true intent, meaning and purpose of the Act of 1911, as manifested by the statute as a whole. Although a thing may be within the letter, it is not within the statute if not within the manifested intention and purpose of the legislature: Henry v. Morgan, 2 Binn. 497; Com. v. Cuyler, 5 W. & S. 275; Koontz's v. Howsare, 100 Pa. 506.

But suppose it should have to be held that the purport and intent of the words used in the Act of 1911 do embrace a repeal of sections 25 and 26 of the Act of 1842, then we should have to hold, also, that such repeal is constitutionally invalid. The constitutional requirement, in force now and when the Act of 1911 was passed, is that "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title."

If a repeal of sections 25 and 26 was a part of the purpose of the Act of 1911, then the act would offend against this constitutional provision in two particulars: First, the act would embrace two distinct and unrelated subjects, (a) the public school system, and (b) the system of criminal procedure, not merely in cases of violations of the School Code itself, but generally in

cases having no relation whatever to the school system. And, secondly, the title of the Act of 1911 would then be an insufficient and misleading title. It gives notice that the laws which are to be repealed are those whose place it supplies and such as "are or may be inconsistent" with this statute, and gives no notice whatever that any laws or parts thereof having absolutely nothing to do with its subject-matter, and being thus entirely incapable of being "inconsistent therewith," are to be affected. See Union Pass. Ry. Co.'s Appeal, 81½ Pa. 91; Brown's Estate, 152 Pa. 401; Com. *v.* Arguello, 7 Wash. Co. Reps. 17. We believe, however, as already indicated, that the repealing clause of the Act of 1911 is capable of being interpreted in such a way as to make it constitutional.

The specific question now for determination being whether an enactment contained in the Act of 1842, which provides how suits may be instituted for the collection of recognizances forfeited in criminal cases, has been repealed by the Act of 1911, so as to be inapplicable to the case at bar, we hold that such repeal has not been effected. We may add that in Com. *v.* Balsamo, *supra,* although the question does not seem to have been raised and argued, the Superior Court treated the Act of 1842 as still in force, in so far as applying to and regulating cases such as the present one.

And now, Jan. 28, 1929, the rule granted is discharged.

From Harry D. Hamilton, Washington, Pa.