**WONG GIM YING, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 12893.**

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 6, 1956.

Decided March 29, 1956.

Mr. John T. Bonner, Washington, D. C., for appellant.

Mr. John D. Lane, Asst. U. S. Atty., with whom Messrs. Leo A. Rover, U. S. Atty., Lewis Carroll and Edward O. Fennell, Asst. U. S. Attys., were on the brief, for appellee.

Before EDGERTON, Chief Judge, and WASHINGTON and DANAHER, Circuit Judges.

DANAHER, Circuit Judge.

This case presents alleged errors in appellant's conviction of contempt of court.

In 1951, two Chinese males, then residents of Hong Kong, made application for documentation as American citizens, seeking passports to enter the United States as two of seven children born to one Lee Mai Poi, admittedly an American citizen. Claiming to be brothers of the appellant they submitted a photograph of the appellant with themselves and others as members of the same family. According to an affidavit later given by appellant, at the time the photo was made she knew of the fraudulent scheme to enter the United States and knew that the photo was designed to assist in persuading the Department of State that the two Chinese males were her brothers. Their application having been denied by the State Department, they filed a complaint for a declaratory judgment establishing their position, and after trial in the District Court, a judgment was entered declaring the two Chinese males to be citizens of the United States as sons of Lee Mai Poi. The Department of State after further investigation secured confessions that the two men were imposters. Thereafter the judgment declaring citizenship was va-

cated on the ground that it had been procured through fraud.

In July 1955, appellant entered the United States claiming to be a blood daughter of Lee Mai Poi. She was thereupon subpoenaed to appear before the grand jury in the District of Columbia on September 7, 1955. She was asked certain questions by the grand jury and made certain replies. As to yet other questions she declined to reply until she might consult with counsel, and after such consultation she refused to answer: (1) What is your father's name? (2) Is your father's name Lee Mai Poi? (3) Do you have a brother by the name of Lee Mun Fat?

She next was asked: How many brothers do you have? Do you have a brother by the name of Lee Mun Bill? and again was permitted upon request to consult counsel. Returning before the grand jury she refused to answer. She was instructed by the foreman of the grand jury to make reply but continued her refusal.

The following day, the United States Attorney related the foregoing facts to the trial judge. Portions of the transcript of the testimony before the grand jury were read. There was presented in evidence the entire file in the action entitled Lee Mun Gan and Lee Mun Ott v. Acheson, the original judgment in which had been found to have been procured through fraud. At that point, the deputy foreman informed the judge that "The Grand Jury wishes to have the witness held in contempt."

Defense counsel offered testimony by an employee of the State Department which, it was claimed, would prove that the State Department was well aware of the fraudulent scheme. The papers introduced as evidence before the grand jury, counsel said, conclusively demonstrated the conspiracy. The judge stated he would assume that an investigation into the fraud was being conducted. The court was then advised of the basis for appellant's refusal to answer the questions, thus:

"The Court: And the questions that were read and the evidence that has purported to be the transcript of the proceedings before the Grand Jury as of yesterday were the questions that were asked yesterday by the Grand Jury?

"Mr. Bonner: She couldn't hear that today because she doesn't understand the language.

"The Court: She knows something was read. I am asking him to communicate that fact to her. You follow me, Mr. Moy?

"The Interpreter: Yes.

"The Witness: I do not understand. I cannot understand that.

"The Court: She went before the Grand Jury yesterday? Ask her that.

"The Witness: Yes.

"The Court: And she was asked certain questions?

"The Witness: Yes.

"The Court: And she refused to answer those questions?

"The Witness: Yes.

"The Court: On what grounds?

"The Witness: I can't answer you.

"The Court: For the record I assume she refused to answer by virtue of the Fifth Amendment?

"Mr. Bonner: That is correct.

"The Court: On the ground that she would incriminate herself?

"Mr. Bonner: On the ground that she would incriminate herself if she answered the questions.

"The Court: You may tell her the Court finds as a matter of fact and law the questions asked her were purely innocuous, and could not by the widest stretch of the imagination incriminate her, and therefore I order her to answer those questions. You may tell her further if she doesn't answer the questions I will commit her to jail until such time as she does."

"What is her answer?

"The Witness: I understand.

"The Court: What is she going to do?

"The Witness: I refuse to answer.

"The Court: Commit her to jail. Have it understood I want her to understand this, because she doesn't understand our language, that she stays in jail until she answers the questions and it may be a day and it may be a year.

"Mr. Bonner: Your Honor, may we approach the Bench first?

"The Court: Let me get rid of this aspect of the matter first.

"She controls the situation.

"The Witness: Yes, I do understand."

The woman does not speak or understand English, and was sworn and examined through an interpreter. She must have realized she had already executed an affidavit in which she had supplied answers to the very questions she refused upon advice of counsel to answer before the Grand Jury. She must have known the Government had relied upon that affidavit as the basis for invalidating as fraudulent the original judgment favoring the conspirators. Under the circumstances, that she was confused, if not poorly advised, seems clear. Compare Rogers v. United States, 1951, 340 U.S. 367, 369, 71 S.Ct. 438, 95 L.Ed. 344. The witness may have meant when she said "I refuse to answer" that she was refusing to tell the judge whether she would or would not make reply before the Grand Jury until she had had an opportunity to consult with counsel. At least twice she had been afforded that privilege by the Grand Jury itself. The trial judge did not order her to go before the Grand Jury and to answer the specific questions which she had previously declined to answer. Nor did he give her a clear choice as to particular questions. Instead, treating her statement to him that she refused to answer as a contempt *in his presence*, the judge ordered her committed and she was taken into custody. But in his order, the judge set forth that Wong Gim Ying "be and she is hereby adjudged in contempt of court for failing to testify before the grand jury, as directed."

██ It is fundamental, as the Fifth Amendment provides, that "No person * * * shall be compelled in any criminal case to be a witness against himself". Its protection when asserted by a witness reaches such answers as might "furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime."[1] To be sure, her Fifth Amendment claim did not of itself establish the hazard, and it remained for the trial judge to determine whether the protection sought was asserted in good faith or whether it lacked justification. At this juncture, as will be apparent from the material above reproduced from the record, the witness had *not* appeared in court to answer to a charge of criminal contempt. She had appeared for the purpose of a hearing to determine her *bona fides* in the setting afforded by the circumstances. But the trial judge proceeded summarily to commit the appellant to jail, apparently acting under Rule 42(a).[2] He had entered no order that the appellant should be returned to the Grand Jury, there specifically to reply to the questions upon the answers to which her fear of self-incrimination depended. He made no certification as the Rule provides nor did his order of contempt recite the facts, if we are to understand that the contempt was committed in the

---

1. Hoffman v. United States, 1951, 341 U. S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118.

2. Rule 42(a), Fed.R.Crim.P., 18 U.S.C.A. provides:

"A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record."

actual presence of the court. On the contrary, the order reads that appellant "is hereby adjudged in contempt of court, for failing to testify before the Grand Jury, as directed." Had she been so directed, and had she then improperly refused to answer the specific questions pursuant to the judge's ruling that her self-incrimination claim lacked foundation, the next step would have called for prosecution on notice. In that circumstance, she would have received the protection of Rule 42(b).[3]

The "failing to testify before the grand jury, as directed" obviously did not occur in the presence of the District judge. He did not see or hear the conduct constituting the contempt. Thus the adoption of the Rule 42(a) procedure was invalid, and it is clear that the requirements of Rule 42(b) were not complied with. What happened in court has already been set forth.

■ From the record before us, we are by no means satisfied that a woman obviously not comprehending at times, who neither understood nor spoke the English language, was guilty of criminal contempt when, a stranger to our law and to our procedure, she declined to tell the District judge whether she would or would not make reply, if ordered to do so, to questions propounded before the Grand Jury. We cannot interpret her statement "I refuse to answer" as a wilful refusal, criminally contemptuous in character, if and when she thought herself in danger of self-incrimination. We are not able to say that she mistakenly found herself in fear. We certainly cannot say that her refusal justified summary incarceration.

We are fully aware of the Government prosecutor's proper desire to lay a foundation for his case against the perjurers. Perhaps he could have made out his grand jury case without this witness.[4] We recognize that in some of these situations there is an added burden resting on enforcement authorities. Courts, like our citizenry as a whole, will not, in the interests of justice, add to that burden, but constitutional rights must be protected as the law enforcement process goes forward. We will, therefore, remand this case with directions that the Government, if it elects to proceed with this appellant as a witness, accord to her the full protection to which she is entitled.[5]

Reversed and remanded.

---

3. Rule 42(b), Fed.R.Crim.P. provides, in part:
   "The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such."

4. Cf. Costello v. United States, 1956, 350 U.S. 359, 76 S.Ct. 406.

5. Hoffman v. United States, supra note 1; Carlson v. United States, 1 Cir., 1954, 209 F.2d 209; United States v. Coffey, 3 Cir., 1952, 198 F.2d 438; cf. Powell v. United States, 1955, 96 U.S.App.D.C. 367, 226 F.2d 269; Traub v. United States, 1955, 98 U.S.App.D.C. ——, 232 F.2d 43, and cases cited therein.