## BROWN .v. UNITED STATES.

No. 4.  Argued October 16, 1958.—Decided March 9, 1959.

*Myron L. Shapiro* argued the cause for petitioner. With him on the brief was *J. Bertram Wegman.*

*John F. Davis* argued the cause for the United States. On the brief were *Solicitor General Rankin, Assistant Attorney General Anderson, Beatrice Rosenberg* and *Carl H. Imlay.*

MR. JUSTICE STEWART delivered the opinion of the Court.

The petitioner was sentenced to 15 months' imprisonment for criminal contempt stemming from his refusal to testify before a federal grand jury. His conviction was affirmed by the Court of Appeals, 247 F. 2d 332. The case was brought here primarily to review the validity of the procedure which resulted in the contempt adjudication. 356 U. S. 926. Other issues relate to the nature and extent of immunity from prosecution conferred by § 205 (e) of the Interstate Commerce Act, as amended,[1] and the severity of the punishment imposed by the District Court.

A grand jury in the Southern District of New York investigating possible violations of Part II of the Interstate Commerce Act [2] issued a subpoena directing the petitioner to appear and testify as to "all and everything which you may know in regard to an alleged violation of Sections 309, 322, Title 49, United States Code." In response to this subpoena the petitioner appeared and, after being sworn, answered a few preliminary questions. He was then asked six further questions concededly relevant to the grand jury's inquiry. These he refused to answer upon the ground of possible self-incrimination. After consulting with his lawyer, who was continuously present in an adjoining anteroom, the petitioner persisted in his refusal to answer, although advised at length by the Assistant United States Attorney that the applicable

---

[1] 49 Stat. 550; 54 Stat. 922, 49 U. S. C. § 305 (d).

[2] Commonly known as the Motor Carrier Act, 49 Stat. 543, as amended, 54 Stat. 919, 49 U. S. C. § 301 *et seq.*

statute conferred complete immunity from prosecution as
to any matter concerning which the petitioner might tes-
tify, and that, therefore, "you do not have any privilege
to plead the Fifth Amendment."

Thereupon the scene of the proceedings shifted to the
courtroom, where the grand jury sought the aid of the
district judge. After being apprised of what had tran-
spired in the grand jury room, the district judge heard
extensive argument by counsel as to the scope of immunity
afforded a grand jury witness under the applicable statute.

Following a weekend recess the district judge ruled that
under the statute the petitioner would be accorded
immunity as extensive as the privilege he had asserted,
and directed that the petitioner therefore return to the
grand jury room and answer the questions. Later the
same day the grand jury again returned to the courtroom
"to request the aid and assistance of the Court." The
district judge was advised through the official reporter
that the petitioner had refused to obey the court's order
to answer the questions.

The judge then addressed the same questions to the
petitioner in the grand jury's presence. Each question
was met with a refusal to answer upon the ground of pos-
sible self-incrimination. The petitioner was thereupon
explicitly directed by the judge to answer each question,
and he just as explicitly refused. The judge inquired
whether the petitioner would persist in his refusal if he
returned to the grand jury room and were again asked the
questions there. The petitioner replied that he would.
After further argument by counsel, the district judge held
the petitioner in contempt and imposed sentence.

Throughout the proceedings in the courtroom the peti-
tioner was represented by counsel, who unsuccessfully
advanced three basic contentions: (1) A witness who tes-
tifies before a grand jury investigating offenses under the
Motor Carrier Act is accorded no statutory immunity

from subsequent prosecution based upon his testimony. (2) Even if some immunity is conferred, it is not coextensive with the constitutional privilege against self-incrimination. (3) In any event, the District Court, by adjudging the petitioner in criminal contempt without following the procedural requirements of Rule 42 (b) of the Federal Rules of Criminal Procedure, deprived the petitioner of due process of law. The same contentions are advanced here. In addition, we are asked to hold that the sentence of 15 months' imprisonment was an abuse of the District Court's discretion.

In determining that § 205 (e) of the Motor Carrier Act clothed the petitioner with statutory immunity coextensive with his constitutional privilege not to incriminate himself, the District Court and the Court of Appeals were plainly correct. The relevant statutory language is unambiguous: ". . . and any person subpenaed or testifying in connection with any matter under investigation under this chapter shall have the same rights, privileges, and immunities and be subject to the same duties, liabilities, and penalties as though such matter arose under chapter 1 of this title [Part I of the Interstate Commerce Act] . . . ." [3] The obvious purpose and effect of this

---

[3] The full text of the subsection, as it appears in the United States Code, is as follows: "So far as may be necessary for the purposes of this chapter, the Commission and the members and examiners thereof and joint boards shall have the same power to administer oaths, and require by subpena the attendance and testimony of witnesses and the production of books, papers, tariffs, contracts, agreements, and documents, and to take testimony by deposition, relating to any matter under investigation, as the Commission has in a matter arising under chapter 1 of this title; and any person subpenaed or testifying in connection with any matter under investigation under this chapter shall have the same rights, privileges, and immunities and be subject to the same duties, liabilities, and penalties as though such matter arose under chapter 1 of this title, unless otherwise provided in this chapter." 49 U. S. C. § 305 (d).

language is to confer the same immunity upon a witness testifying in an investigation under Part II of the Interstate Commerce Act as is conferred upon one testifying in an investigation under Part I.   Both Part I and Part II contain criminal sanctions, and the power of a grand jury to investigate violations of either Part is unquestioned.

The statute which confers immunity upon a witness testifying in a grand jury investigation under Part I was enacted in 1893.[4]   For more than half a century it has

---

[4] 27 Stat. 443, 49 U. S. C. § 46.  "No person shall be excused from attending and testifying or from producing books, papers, tariffs, contracts, agreements, and documents before the Interstate Commerce Commission, or in obedience to the subpoena of the commission, whether such subpoena be signed or issued by one or more commissioners, or in any cause or proceeding, criminal or otherwise, based upon or growing out of any alleged violation of chapter 1 of this title on the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him, may tend to criminate him or subject him to a penalty or forfeiture.  But no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing, concerning which he may testify, or produce evidence, documentary or otherwise, before said commission, or in obedience to its subpoena, or the subpoena of either of them, or in any such case or proceeding: *Provided,* That no person so testifying shall be exempt from prosecution and punishment for perjury committed in so testifying.  Any person who shall neglect or refuse to attend and testify, or to answer any lawful inquiry, or to produce books, papers, tariffs, contracts, agreements, and documents, if in his power to do so, in obedience to the subpoena or lawful requirement of the commission shall be guilty of an offense and upon conviction thereof by a court of competent jurisdiction shall be punished by a fine of not less than $100 nor more than $5,000, or by imprisonment for not more than one year or by both such fine and imprisonment."

See also 32 Stat. 904, 49 U. S. C. § 47, which provides: "No person shall be prosecuted or be subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence, documentary or otherwise, in any proceeding, suit, or prosecution under chapter 1 of this title

been settled that this statute confers immunity from
prosecution coextensive with the constitutional privilege
against self-incrimination, and that the witness may not
therefore lawfully refuse to testify. *Brown* v. *Walker*,
161 U. S. 591 (1896). The context in which the doctrine
originated and the history of its reaffirmance through the
years have been so recently re-examined by this Court in
*Ullman* v. *United States,* 350 U. S. 422, as to make it a
needless exercise to retrace that ground here. Suffice it
to repeat that *Brown* v. *Walker* has become "part of our
constitutional fabric." 350 U. S., at 438. It is thus
clearly too late in the day to question the constitutional
sufficiency of the immunity provided under Part I of the
Act.

In contending that this immunity is not fully im-
ported into Part II the petitioner grasps at straws.
He points out that the above-quoted language of 49
U. S. C. § 305 (d) which incorporates into Part II the
immunity provisions of Part I is separated by only a semi-
colon from a provision which gives the Commission in-
vestigative powers under Part II. See footnote 3. He
would therefore have us rewrite the section so as to make
the immunity provision applicable only to witnesses
appearing before the Commission, not to those appearing
before a grand jury or in a court. Such a construction
would not only do violence to plain language, but also, as
the Court of Appeals observed, to the whole structure of
the Interstate Commerce Act. See 247 F. 2d, at 336–337.

The petitioner argues alternatively that even if some
immunity is granted by Part II to a grand jury witness,
the immunity is not commensurate with that of Part I,
and that its scope is therefore constitutionally insufficient.
The contention is that § 305 (d) provides immunity from

or any law amendatory thereof or supplemental thereto: *Provided,*
That no person so testifying shall be exempt from prosecution or
punishment for perjury committed in so testifying."

prosecution only for offenses related to violations of the Motor Carrier Act itself because of the clause appearing at the beginning of the section—"So far as may be necessary for the purposes of this chapter." See footnote 3. Assuming that this clause limits the immunity provision of the section at all, it clearly limits only the class of witnesses to whom the immunity will attach, not the scope of the immunity conferred. The petitioner "subpoenaed . . . in connection with [a] matter under investigation under this chapter . . . necessary for the purposes of this chapter" was clearly within that class.

Congress thus provided that the petitioner could not and would not incriminate himself by answering the questions put to him. He could not "be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing, concerning which he [might] testify. . . ." 49 U. S. C. § 46. He therefore had an unqualified duty to answer the questions as he was directed to do.

We turn then to the petitioner's attack upon the validity of the procedure which the District Court followed in adjudicating him in contempt.[5] This procedure, it is contended, robbed the petitioner not only of the safe-

---

[5] The petitioner and his counsel were advised in advance what the procedure was to be. "Mr. Wachtell: The Government's understanding of the nature of this proceeding is this: At this point the grand jury is still merely requesting the assistance of the Court. What the Government would request is that if it appears, as will be shown by the testimony of the grand jury reporter, that the witness is persisting in his refusal, the Government will then request of this Court that the Court itself, in the presence of the grand jury, will put the six questions to the witness and ask him, first, whether he is willing to answer them now, and, second, would he answer them if he were sent back to the grand jury again. And if the witness again refuses here and now in the physical presence of the Court or persists in his refusal to answer, that the witness be held in summary contempt under Rule 42 (a) of the Federal Rules of Criminal Procedure.

"The Court: That is what I propose."

guards of notice, opportunity to prepare a defense, and a hearing, but also of the presumption of innocence and other rights basic to a fair criminal trial.

In view of the apparent breadth of the petitioner's argument, it may promote analysis of this aspect of the case to emphasize at the outset what it does not involve. This is not a situation where the contempt was in any sense personal to the judge, raising issues of possible unfairness resulting from the operation of human emotions. Cf. *Cooke* v. *United States*, 267 U. S. 517, 539; *Sacher* v. *United States*, 343 U. S. 1; *Offutt* v. *United States*, 348 U. S. 11. This is not a case of "misbehavior" involving factual issues as to the nature of the petitioner's conduct and whether it occurred in the "presence" of the court or "so near thereto as to obstruct the administration of justice." [6] Cf. *Ex parte Savin*, 131 U. S. 267; *Ex parte Cuddy*, 131 U. S. 280; *Nye* v. *United States*, 313 U. S. 33, 44–53. Moreover, the petitioner does not question the power of the court to punish disobedience of its lawful order as a criminal contempt,[7] and to do so summarily, if the disobedience occurs in the presence of the court and in the sight or hearing of the judge.[8]

The issue presented is thus considerably narrower than the broad strokes of the petitioner's argument would at

---

[6] 18 U. S. C. § 401 (1).

[7] 18 U. S. C. § 401. Power of court:

"A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

.      .      .      .      .      .

"(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

[8] Rule 42. Criminal Contempt:

"(a) SUMMARY DISPOSITION. A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record."

first suggest. Indeed, the argument boils down to the contention that when the petitioner first disobeyed the court's order in the grand jury room the court had no choice but to initiate criminal contempt proceedings against him at once, under the provisions of Rule 42 (b) of the Federal Rules of Criminal Procedure,[9] and that it therefore violated his rights by calling him before it and giving him another opportunity to answer the questions before adjudicating him in contempt. This argument disregards the historic relationship between court and grand jury. It finds support in neither precedent nor reason.

A grand jury is clothed with great independence in many areas, but it remains an appendage of the court, powerless to perform its investigative function without the court's aid, because powerless itself to compel the testimony of witnesses. It is the court's process which summons the witness to attend and give testimony, and it is the court which must compel a witness to testify if, after appearing, he refuses to do so.

When the petitioner first refused to answer the grand jury's questions, he was guilty of no contempt. He was

---

[9] Rule 42. Criminal Contempt: "(b) DISPOSITION UPON NOTICE AND HEARING. A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. He is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment."

entitled to persist in his refusal until the court ordered him to answer. Unless, therefore, it was to be frustrated in its investigative purpose, the grand jury had to do exactly what it did—turn to the court for help. If the court had ruled that the privilege against self-incrimination had been properly invoked, that would have been the end of the matter. Even after an adverse ruling upon his claim of privilege, the petitioner was still guilty of no contempt. It was incumbent upon the court unequivocally to order the petitioner to answer. Cf. *Wong Gim Ying* v. *United States,* 98 U. S. App. D. C. 23, 231 F. 2d 776. The court did so.

When upon his return to the grand jury room the petitioner again refused to answer the grand jury's questions, now in direct disobedience of the court's order, he was for the first time guilty of contempt. At that point a contempt proceeding could unquestionably and quite properly have been initiated. Since this disobedience of the order did not take place in the actual presence of the court, and thus could be made known to the court only by the taking of evidence, the proceeding would have been conducted upon notice and hearing in conformity with Rule 42 (b). See *Carlson* v. *United States,* 209 F. 2d 209, 216 (C. A. 1st Cir.).

A judge more intent upon punishing the witness than aiding the grand jury in its investigation might well have taken just such a course. Instead, the court made another effort to induce the petitioner to testify. Again unequivocally advising the petitioner that the statute afforded him complete immunity, the court directed him to answer the questions. Had the petitioner done so, he would have purged himself of contempt, and the grand jury's investigation could have proceeded.[10] His deliberate refusal,

---

[10] The petitioner's contention that the court's very act of directing him to answer somehow violated his privilege against self-incrimination is thus clearly incorrect.

continuing his contempt, cf. *Yates* v. *United States,* 355
U. S. 66, 75, left the court no choice.[11]  Since the diso-
bedience occurred in the court's presence, it was clearly
proper to proceed under Rule 42 (a).

Rule 42 of the Federal Rules of Criminal Procedure is
no innovation.  It simply makes "more explicit" the
long-settled usages of law governing the procedure to be
followed in contempt proceedings.[12]  No decision of this
Court has ever questioned the propriety of summary con-
tempt proceedings in aid of a grand jury investigation.
Repeated decisions of this Court and the Courts of
Appeals have, at least *sub silentio,* approved such a pro-
cedure, stemming as it does from the usages of the com-
mon law.[13]  Indeed less than a decade ago this Court did
not consider the question sufficiently doubtful to merit
discussion.[14]  In the light, therefore, of both reason and

---

[11] We do not discuss the petitioner's claim, first advanced in the
Court of Appeals, that the District Court proceeding was conducted
in "secrecy," because the record does not show this to be the fact.

[12] *Sacher* v. *United States,* 343 U. S. 1, 7; Notes of Advisory
Committee on Rules, 18 U. S. C. A., Rule 42.

[13] *Rogers* v. *United States,* 340 U. S. 367; *Wilson* v. *United States,*
221 U. S. 361, 369, *semble; Hale* v. *Henkel,* 201 U. S. 43, 46; *United
States* v. *Curcio,* 234 F. 2d 470, 473 (C. A. 2d Cir.), rev'd on other
grounds, 354 U. S. 118 (1957); *Lopiparo* v. *United States,* 216 F.
2d 87 (C. A. 8th Cir.); *United States* v. *Weinberg,* 65 F. 2d 394,
396 (C. A. 2d Cir.).  For the earlier practice at common law, see
*People ex rel. Phelps* v. *Fancher,* 4 Thompson & Cook (N. Y. 1874)
467; *People ex rel. Hackley* v. *Kelly,* 24 N. Y. 74, 79–80 (1861);
*In re Belle Harris,* 4 Utah 5, 8–9, 5 P. 129, 130–132 (1884); *Heard* v.
*Pierce,* 8 Cush. 338, 342–345 (Mass. 1851).

[14] In *Rogers* v. *United States,* 340 U. S. 367, the petitioner attacked
the validity of the summary procedure by which she was found guilty
of criminal contempt for refusing to testify before a grand jury.
(See petitioner's brief Nos. 20, 21, 22, O. T., 1950, pp. 54–58; brief
of United States, *ibid.,* pp. 51–53.)  Neither the opinion of the Court
nor the dissenting opinion discussed the question.  A petition for
rehearing which complained of the Court's silence on this issue

authority, we hold that the court's action in affording the petitioner a *locus penitentiae* before finally adjudicating him in contempt was entirely proper.

We hold, finally, that the sentence of 15 months' imprisonment was not an abuse of the District Court's discretion. Because there is no statutory limit upon a District Court's sentencing power in cases of criminal contempt, *Green* v. *United States,* 356 U. S. 165, this Court is not without power to review its exercise. Cf. *Yates* v. *United States,* 356 U. S. 363; *Nilva* v. *United States,* 352 U. S. 385, 396. But the decision is one primarily for the District Court, to be made "with the utmost sense of responsibility and circumspection." *Green* v. *United States, supra,* at 188. The record does not indicate that the district judge's decision was otherwise reached. Before sentence was imposed, the petitioner's counsel was fully, repeatedly and patiently heard.[15]

*Affirmed.*

---

(Petition for Rehearing No. 20, O. T., 1950, pp. 6–10) was denied. 341 U. S. 912.

[15] The petitioner points out that the sentence imposed was in excess of the maximum punishment authorized by statute for substantive violations of the Motor Carrier Act. A more relevant comparison might be made to the statutory offenses involving obstruction of the administration of justice, punishable by a maximum of five years' imprisonment. 18 U. S. C. § 1503. The record shows that the grand jury was investigating suspected violations of the Motor Carrier Act not by the petitioner, but by others. The District Court was informed that the testimony the grand jury "desired to elicit from this witness . . . is of the very greatest importance, and the witness's refusal to answer is a very great stumbling block to this investigation and to all these investigations." If within 60 days of the termination of these proceedings the · petitioner indicates his willingness to testify, the District Court will no doubt consider that fact in passing upon a motion for reduction of his sentence under Rule 35 of the Federal Rules of Criminal Procedure.

Mr. Chief Justice Warren, with whom Mr. Justice Black, Mr. Justice Douglas, and Mr. Justice Brennan join, dissenting.

I find myself in disagreement with the majority opinion, not because of its interpretation of the scope of the immunity provisions here in question, but because it sanctions the procedure used below to convict petitioner summarily of criminal contempt and to sentence him to 15 months' imprisonment under Rule 42 (a) when the proceedings should have been in accordance with Rule 42 (b). The denial of even the minimal protections accorded by Rule 42 (b) deprived petitioner of an opportunity to prepare a legal defense, or to demonstrate extenuating circumstances,[1] and satisfied neither the plain intent of Rule 42 nor the principles of fair play.

Rule 42 (b) prescribes that criminal contempts "shall" be prosecuted on notice allowing a "reasonable time for the preparation of the defense" and other protections, except in those instances wherein Rule 42 (a) provides that contempts committed in the presence of the court "may" be punished summarily. This demonstrates that the general mode of procedure was to be that prescribed by Rule 42 (b). On the other hand, Rule 42 (a) covers

---

[1] The prosecutor indicated to the court that the inquiry, though directed toward minor violations of the Interstate Commerce Act, was really part of an effort to discover facts concerning notorious gangsters suspected of complicity in the Victor Riesel acid-throwing incident and general racketeering in the Southern District of New York. In view of the total absence of any intimation that petitioner had violated the Interstate Commerce Act or was himself guilty of criminal conduct, the actual basis for his refusal to testify may well have been fear of gangster reprisals, a not unreasonable fear in such circumstances. Regardless of the legal significance of such a defense, see *Widger* v. *United States,* 244 F. 2d 103, a hearing would have provided an opportunity for presentation of such facts to the judge and might well have affected the length of sentence.

only specific situations and even then the contempt procedure need not be summary. In the light of the concern long demonstrated by both Congress [2] and this Court [3] over the possible abuse of the contempt power, it is obvious that Rule 42 (a) was reserved for exceptional circumstances. These might include threatening the judge, *United States* v. *Hall,* 176 F. 2d 163, or other acts disrupting court proceedings and obstructing the administration of the court's business. *United States* v. *Landes,* 97 F. 2d 378.

Rule 42 (a) was not inserted in the Rules in order to ease the difficulties of prosecuting contempts. It was not meant to authorize the practice of having government prosecutors force persons who had already committed contempts outside of the presence of the court to repeat the action before the court and thus subject themselves to deprivation of their rights under Rule 42 (b). Given the purpose of Rule 42 (a) with its admittedly precipitous character and extremely harsh consequences, this Court should not countenance a procedure whereby a contempt already completed out of the court's presence may be reproduced in a command performance before the court to justify summary disposition. That is not to say the Government could not properly bring the petitioner before the court a second time. Of course, both the Government and the grand jury could use such additional persuasion to obtain answers to the questions. But that second refusal should not constitute a second contempt. Nor should this procedure alone justify imposing a more

---

[2] See, generally, Frankfurter and Landis, Power of Congress Over Procedure in Criminal Contempts in "Inferior" Federal Courts—A Study in Separation of Powers, 37 Harv. L. Rev. 1010.

[3] See, *e. g., Cammer* v. *United States,* 350 U. S. 399; *Offutt* v. *United States,* 348 U. S. 11; *Nye* v. *United States,* 313 U. S. 33; *Cooke* v. *United States,* 267 U. S. 517; *Ex parte Terry,* 128 U. S. 289; *Anderson* v. *Dunn,* 6 Wheat. 204.

severe penalty than would have been appropriate for contempt of the grand jury.[4]

After petitioner refused to answer the questions the judge might very properly have summarily committed the petitioner to jail for civil contempt until he answered the questions. *Oriel* v. *Russell,* 278 U. S. 358, 363. See *Gompers* v *Bucks Stove & Range Co.,* 221 U. S. 418, 442. This is not disputed. In such a proceeding the recalcitrant witness although summarily committed is said to carry the keys to the jail in his own pocket. See *In re Nevitt,* 117 F. 448, 461. Or, upon presentment, the judge might have given notice in open court of a criminal contempt proceeding to be commenced under the procedures set forth in Rule 42 (b), and the Government so concedes. That is the normal manner of proceeding in these cases. See *Wong Gim Ying* v. *United States,* 98 U. S. App. D. C. 23, 27, 231 F. 2d 776, 780; *Carlson* v. *United States,* 209 F. 2d 209, 216.

But the Government was not satisfied with such a procedure. On April 8, though ostensibly seeking the court's assistance in obtaining the answers to the questions, the prosecutor never even faintly suggested any coercive remedy.[5] Rather, from the outset he spoke in terms assuming that petitioner would continue his refusal to testify and made known to the court that he would seek a summary disposition under Rule 42 (a) immediately. After the finding of contempt, he asked the judge to

---

[4] Although the district judge asked petitioner other questions during this second proceeding in the courtroom, the judge's certificate makes clear that the contempt found was for refusal to answer the six substantive questions and not for any other answers. Cf. *Carlson* v. *United States,* 209 F. 2d 209, 216.

In practice, contempts before the court are punished no more severely than those before the grand jury. See n. 11, *infra.*

[5] See the statement in n. 5 of the Court's opinion. But see n. 9, *infra.*

give petitioner a substantial sentence and the judge complied—with 15 months in the penitentiary. He then asked the judge to omit a purge clause which the judge did.[6] Thereafter he urged the judge to deny bail and the judge promptly acceded to that request.

Beyond a short statement, nothing was offered by the Assistant United States Attorney to show the seriousness of the contempt.[7] The offense the grand jury was investigating was punishable by no more than a fine. 71 Stat. 352, 49 U. S. C. (Supp. V) § 322 (a).

I do not assert that the contempt could not be more serious than the offense under investigation,[8] but where there is a disparity such as exists in this case, a hearing should be held to demonstrate, subject to rebuttal, at least the purpose and significance of the grand jury investigation, the witness' relationship to the subject matter under investigation, and the effect of the witness' recalcitrance on the future of the investigation.

The Court's opinion observes that the judge may reduce the sentence within 60 days of the termination of these proceedings under Rule 35. But that power has been held to be discretionary, *Flores* v. *United States*, 238 F.

---

[6] See n. 13, *infra*.

[7] The only expression by the Assistant United States Attorney about the connection of petitioner with the grand jury investigation then in progress was the following statement made during discussion of the punishment:

"The information that it is desired to elicit from this witness, I represent to the Court, is of the very greatest importance, and the witness' refusal to answer is a very great stumbling block to this investigation and to all these investigations."

[8] Comparing this sentence with that possible under the penalty for obstructing the administration of justice, 18 U. S. C. § 1503, is not meaningful because in such a prosecution petitioner would have been entitled to all of the safeguards normally afforded criminal defendants, including, of course, the very basic protection of trial by jury.

2d 758; *Miller* v. *United States,* 224 F. 2d 561, and does not in any sense make a term in the penitentiary comparable to a jail commitment for civil contempt. Exercise of Rule 35 power does not make petitioner any less a convicted criminal. Also, the failure to invoke civil contempt indicates that the judge intended the sentence to be punitive and not coercive.[9]

It is asserted that only a legal issue is involved here— the scope of immunity—so that there was no need to give petitioner time to prepare a defense under Rule 42 (b).[10] But this overlooks the right of petitioner to present evidence in extenuation and to show what other courts had done in similar circumstances. This argument also neglects the importance of affording the judge an opportunity for reflection. A judge should not be forced—or goaded— into spur-of-the-moment decisions where the imprisonment of a person is in the balance. There is no indication that the district judge expected the grand jury to return on the afternoon of April 8. Yet, within a short time after its return, the judge had convicted the petitioner and sentenced him to 15 months in prison for his conduct and had denied bail. Neither counsel discussed the sentences given in comparable cases and, from the severity of the sentence here, it is clear that the judge was not

---

[9] This would seem true despite the confusion existent in the courtroom just before the sentencing wherein the prosecutor asked the judge for a "substantial sentence, and that is done not so much for any punitive effect as it would be for the coercive effect of the sentence." This was stated just after the prosecutor had requested the judge to omit a purge clause!

[10] Although this Court disagrees with petitioner's argument concerning the breadth and applicability of the immunity provisions in question, the Court of Appeals did grant bail and its opinion recognized that the point had some "novel aspects." 247 F. 2d 332, 338. Thus, when considering the action taken by the district judge, it must be recognized that the question of immunity was not frivolous.

advised how other judges were treating similar offenses.[11] There is no statutory limit for the length of sentence in contempts of this character. Apparently, the 15-month sentence in this case is the longest contempt sentence ever

[11] The following cases involving contempt of the grand jury appear to be the only appellate decisions in the Second Circuit: *O'Connell* v. *United States*, 40 F. 2d 201 (three months with purge clause), cert. granted 281 U. S. 716, cert. dismissed on stipulation of counsel 296 U. S. 667. *Lang* v. *United States*, 55 F. 2d 922 (90 days with purge clause), cert. granted 285 U. S. 533, cert. dismissed 286 U. S. 523. *United States* v. *Weinberg*, 65 F. 2d 394 (60 days); *United States* v. *Zwillman*, 108 F. 2d 802 (six-month sentence reversed); *United States* v. *Weisman*, 111 F. 2d 260 (six-month sentence reversed); *United States* v. *St. Pierre*, 132 F. 2d 837 (five-month sentence), cert. dismissed as moot 319 U. S. 41. The following cases in the Second Circuit definitely adopted the procedure here in question: *United States* v. *Trock*, 232 F. 2d 839 (four-month sentence with purge clause), reversed 351 U. S. 976; *United States* v. *Curcio*, 234 F. 2d 470 (six-month sentence with purge clause) reversed 354 U. S. 118; *United States* v. *Gordon*, 236 F. 2d 916 (six-month sentence containing a purge clause reversed); *United States* v. *Courtney*, 236 F. 2d 921 (three-month sentence reversed); *United States* v. *Miranti*, 253 F. 2d 135 (two 5-year sentences reversed with a comment on the district judge's anger at the witnesses).

Cases from other Circuits involving grand jury contempts: *United States* v. *Caton*, 25 Fed. Cas. No. 14,758 ($5 fine); *In re Counselman*, 44 F. 268 ($500 fine and civil contempt) reversed *sub nom. Counselman* v. *Hitchcock*, 142 U. S. 547; *Elwell* v. *United States*, 275 F. 775 ($500 fine and civil contempt); *Camarota* v. *United States*, 111 F. 2d 243 (six months); *United States* v. *Hoffman*, 185 F. 2d 617 (five months), reversed 341 U. S. 479; *Healey* v. *United States*, 186 F. 2d 164 (four sentences of one year or more and one $10 fine reversed); *United States* v. *Greenberg*, 187 F. 2d 35 (five-month sentence), reversed 341 U. S. 944; *Carlson* v. *United States*, 209 F. 2d 209 (18-month sentence vacated); *Hooley* v. *United States*, 209 F. 2d 219 (nine-month sentence vacated); *O'Keefe* v. *United States*, 209 F. 2d 223 (nine-month sentence vacated); *Maffie* v. *United States*, 209 F. 2d 225 (one-year sentence vacated); *Daly* v. *United States*, 209 F. 2d 232 (one-year sentence vacated); *Hooley* v. *United States*, 209 F. 2d 234 (one-year sentence vacated).

The following cases involve contempts for refusals to answer in

sustained by any appellate court in the federal system for a refusal to answer questions of a court or grand jury.[12] Even a short delay might have given the judge enough time for research to establish that the Government's reason for seeking omission of the purge clause was groundless.[13]  Also, the judge took no time to consider the bail

the courtroom: *Rogers* v. *United States,* 179 F. 2d 559, aff'd 340 U. S. 367 (four-month sentence for refusal before court to testify before grand jury); *Green* v. *United States,* 193 F. 2d 111 (C. A. 2d Cir.) (six-month sentence for telling court he would not obey order to produce records before the grand jury at a later date); *United States* v. *Field,* 193 F. 2d 92 (C. A. 2d Cir.) (one sentence of 90 days and two sentences of 6 months, all with purge clauses for refusals to answer certain questions and produce certain documents at hearing before the court); *Enrichi* v. *United States,* 212 F. 2d 702 (six-month sentence and $500 fine for refusal before court to testify before grand jury).

Even refusals to testify during the course of trial have not been punished as severely: *In re Cashman,* 168 F. 1008 (D. C. S. D. N. Y.) (8 months and $750 fine for refusal to answer questions at bankruptcy hearing); *United States* v. *Barker,* 11 F. R. D. 421 (90 days and $1,000 fine for refusal to testify on cross-examination during trial); *United States* v. *Flegenheimer,* 82 F. 2d 751 (C. A. 2d Cir.) (six months for witness' refusal to give direct testimony); *United States* v. *Gates,* 176 F. 2d 78 (C. A. 2d Cir.) (30 days with purge clause for refusal to answer question on cross-examination during trial); *Widger* v. *United States,* 244 F. 2d 103 (one-year sentence for refusal to testify reversed).

[12] All of the longer sentences have been vacated or reversed on appeal: *United States* v. *Miranti,* 253 F. 2d 135 (C. A. 2d Cir.); *Carlson* v. *United States,* 209 F. 2d 209; *Healey* v. *United States,* 186 F. 2d 164.  The 18-month sentence sustained in *Lopiparo* v. *United States,* 216 F. 2d 87, was not for a refusal to testify.  Rather, the contempt there was based upon the judge's disbelief of defendant's story that he could not find the corporate books which he was ordered to produce before the grand jury.  216 F. 2d at 91.  Even the sentence in that case contained a purge clause.

[13] The stated reason for requesting omission of a purge clause was the legal effect it might have in shortening the fixed term.  But see *Lopiparo* v. *United States,* 222 F. 2d 897.  Cf. *Loubriel* v. *United States,* 9 F. 2d 807, relied on by the Government.

question. After a minimum of argument by counsel, the judge denied bail pending appeal.[14]

Shortcuts in criminal procedure are always confusing[15] and dangerous, but they are particularly so here, because if sanctioned by this Court, prosecutors throughout the federal system will be tempted to do all they can to make Rule 42 (b) a dead letter. The contempt power traditionally has been utilized sparingly and only when necessary to uphold the dignity of the courts. Early in our history, the limits of the power to punish for contempt were said to be "the least possible power adequate to the end proposed." *Anderson* v. *Dunn,* 6 Wheat. 204, 231. As MR. JUSTICE FRANKFURTER has said in *Sacher* v. *United States,* 343 U. S. 1, 24–25 (dissenting opinion):

> "To dispense with indictment by grand jury and trial by a jury of twelve does not mean the right to disregard reason and fairness. Reason and fairness demand, even in punishing contempt, procedural safeguards within which the needs for the effective administration of justice can be amply satisfied while at the same time the reach of so drastic a power is

---

[14] Eight days later, the Court of Appeals granted bail and petitioner has been at large since.

[15] The question of whether the April 8 proceedings were conducted in secret is the subject of some confusion caused by the swift procedure invoked. It is clear that on April 5 the courtroom was cleared. It is also clear that on April 8 the grand jury returned to the courtroom ostensibly for further aid and assistance, and that the grand jury reporter read to the court what had happened earlier. Though the transcript does not so indicate, it would seem most likely that secrecy was again in effect. In fact, petitioner's counsel objected to the procedure and asked that he be served in "open court" with notice of the charges. There is no indication of any change in this situation after the refusal to answer and before the actual contempt proceeding. The Assistant United States Attorney has stated that in fact there were no spectators in the courtroom on April 8. A secret proceeding is no less secret because the defendant is allowed to have counsel. See also n. 10, *supra.*

kept within limits that will minimize abuse. While experience has shown the necessity of recognizing that courts possess this authority, experience has also proven that restrictions appropriate to the purposes of the power must fence in its exercise. Hence Congress, by legislation dating back more than a hundred years, has put geographic and procedural restrictions upon the power of the United States courts to punish summarily for contempt. . . .

"The Court did so for a reason deeply imbedded in our legal system and by that very fact too often neglected. Times of tension, which are usually periods of war and their aftermath, bring it to the surface. Reflecting no doubt their concern over untoward events in law enforcement arising out of the First World War, Mr. Justice Brandeis and Mr. Justice Holmes gave quiet warning when they observed that 'in the development of our liberty insistence upon procedural regularity has been a large factor.' *Burdeau* v. *McDowell,* 256 U. S. 465, 477. It is not for nothing that most of the provisions of our Bill of Rights are concerned with matters of procedure.

"That is what this case is about—'procedural regularity.' Not whether these petitioners have been guilty of conduct professionally inexcusable, but what tribunal should sit in judgment; not whether they should be punished, but who should mete out the appropriate punishment; not whether a Federal court has authority to prevent its proceedings from being subverted, but how that authority should be exercised so as to assure the rectitude of legal proceedings and at the same time not detract from the authority of law itself."

And, shortly thereafter, the Court adopted this viewpoint. See *Offutt* v. *United States,* 348 U. S. 11. The importance of procedural regularity often lies in advising

the defendant of the procedure he must expect and giving him time to prepare. Also, judicial reflection is an invaluable by-product of procedures that are designed to be no more precipitous than necessary to meet the demands of the situation. Here, there was no demonstrated need for haste and no resultant benefit (except in saving the United States Attorney's office the time and effort of preparing for a hearing on notice). There had already been a fully committed contempt before the grand jury which might have been prosecuted within a short time giving petitioner only "a reasonable time for the preparation of the defense." This Court with its supervisory power over the administration of criminal justice in the federal courts, *McNabb* v. *United States*, 318 U. S. 332, 340, should not permit the utilization of summary contempt procedures where immediate action is not necessary for the preservation of the respect and dignity of the federal courts. Improvident use of summary procedures only weakens that respect.[16]

In the light of the sentences given in this type of case, I doubt if any judge in the federal system would summarily send a witness to the penitentiary for 15 months for merely refusing to testify in a grand jury investigation of whether a trucker is operating without an ICC certificate. It is quite obvious that much of the sentence was for some reason collateral to that investigation. It is not sufficient for the purpose of increasing punishment to act on the suspicion that the refusal of the witness to testify may redound to the interest of a racketeer, and on that basis deny him the protections that Congress has seen fit to accord to all witnesses before grand juries. If such factors are to play a part in the sentence the witness is entitled to a hearing on notice.

---

[16] Reliance upon the improper application of Rule 42 (a) to petitioner in this case, makes it unnecessary to discuss the issue raised in *Green* v. *United States*. 356 U. S. 165, 193 (dissenting opinion)

Unfortunately, the failure to adhere to procedural regularity may be glossed over in the investigation of matters of burning public interest, but it should be remembered that the deprivation of the rights of a witness in such an investigation must apply as a precedent to people in all walks of life, both good and bad. I suggest that the full import of the decision in this case will not be recognized until it is applied at some future time in other types of investigations and to other people.

I would reverse the conviction.