**In the Matter of the GRAND JURY IN-VESTIGATION (GENERAL MO-TORS CORPORATION).**

United States District Court
S. D. New York.

Feb. 3, 1964.

Eugene J. Metzger and Sidney Milun, Attys. Antitrust Div., Dept. of Justice, New York City, for the United States.

Cravath, Swaine & Moore, New York City, for General Motors Corp.; Bruce Bromley and John W. Barnum, New York City, of counsel.

PALMIERI, District Judge.

This is a motion by General Motors Corporation to strike a portion of a grand jury subpoena duces tecum on the ground that it is beyond the scope of a valid subpoena and on the further ground that there is no legal basis therefor. The problem arises against the background of an investigation under the antitrust laws and, as is to be expected in situations of this kind, the subpoena calls for a vast quantity of documents. The portion of the subpoena attacked by the motion is part of an attachment consisting of six and a half typewritten pages of large legal size, and reads as follows:

III. Assertion of a Claim of Privilege:

As to any document, otherwise called for by the terms of this subpoena, which the corporation wishes to withhold from production on the grounds of a claim of privilege, the corporation may, in lieu of production:

1. Submit to the Government a list identifying each such document, by date, author, and address (if any), the distribution (if the document or a copy thereof was made available to other than the addressee), the nature of the document and the type of privilege claimed.

2. Said documents shall be submitted to the Court under seal for determination of the validity of the claim.

These words are indeed novel. They prescribe a new method for the prospective witness to assert a claim of immunity. They also provide a new method for the Court to deal with the assertion of such a claim by the witness. The witness must provide the Government [1] with a list of the documents with respect to which the privilege is claimed, as well as a good deal of peripheral information regarding them. Additionally, the documents are to be submitted to the Court under seal "for determination of the validity of the claim." This procedure, prescribed under threat of contempt and the relevant penalties,[2] involves no appearance before the Grand Jury, nor any disclosure to that body.

It appears from the affidavit of Mr. Bruce Bromley, attorney for General Motors Corporation, that a number of documents called for by the subpoena are claimed to be immune from disclosure as documents protected by the attorney-client privilege.

■ The issue presented by this motion is whether a prospective grand jury witness, wishing to assert a legal privilege against disclosure, can be compelled to make partial disclosure of the documents to Government counsel and to present the documents to the Court under seal for determination of a claim of immunity. I have concluded that the witness merits protection against such an obligation. The proper way to test the assertion of the claim is by its assertion in a formal appearance by the witness before the Grand Jury.

■ The extensive brief filed by the Government reveals no valid basis for the unusual procedure prescribed by this subpoena nor is any procedural precedent cited in its support. The cases cited in the brief, notably, People's Bank of Buffalo v. Brown, 112 F. 652, 654–5 (3d Cir. 1902) ; Schwimmer v. United States, 232 F.2d 855, 864 (8th Cir. 1956), cert. denied, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed. 2d 52 (1956) ; Brown v. United States, 276 U.S. 134, 48 S.Ct. 288, 72 L.Ed. 500, (1928) ; and Consolidated Rendering Co. v. Vermont, 207 U.S. 541, 28 S.Ct. 178, 52 L.Ed. 327 (1908), are inapposite and unpersuasive. There is no doubt about the basic premise that the assertion of the privilege against disclosure must be subject to Court adjudication and cannot be decided unilaterally by the party asserting the privilege.

Schwimmer v. United States, supra, cited by the Government cannot properly be understood to support the procedure prescribed to by the subpoena. The language quoted by the Government from the opinion of the 8th Circuit at p. 859, of 232 F.2d is taken out of context. A reading of the entire passage [3] makes it apparent that the custody of the documents by the Marshal was an incident of the Court's action in the case. It was not, as is the case here, a separate procedure unconnected with the appearance of a witness before the Grand Jury. On the other hand, the decision in United States v. International Nickel Co., 203 F.Supp. 739 (S.D.N.Y.1962), relied upon by the defendant, is not dispositive. But it does lend some support for its position in a different context. There the issue for determination by the Court was the appropriate application of a provision of a consent judgment entered in this court

1. Presumably, disclosure must be made to Government counsel whose name and address appear on the subpoena.

2. The subpoena contains the admonition that " * * * for failure to attend and produce the said documents you will be deemed guilty of contempt of Court and liable to penalties of the law."

3. The entire passage reads as follows, with the portion quoted by the Government italicized:

"The motions to quash were presented to and heard by the Court on the day that the Dean Rubber Manufacturing Co. was required to respond to the two subpoenas. That Company had brought in and deposited before the grand jury, at the appointed time, all the containers which Schwimmer had placed in storage with it, but the boxes and cabinet drawers *were kept under seal by the Marshal until the Court had had an opportunity to consider* Schwimmer's motions."

486

under the antitrust laws. It was held that the access permitted to Government agents to all relevant books and records did not imply permission for their access to all the files of defendant in order that a preliminary determination of relevancy might be made by the Government agents.

■ In the usual and traditional situations, assertions of privilege against disclosure before a Grand Jury are tested by contempt proceedings in aid of the grand jury investigation. See Brown v. United States, 359 U.S. 41, 79 S.Ct. 539, 3 L.Ed.2d 609 (1959); Levine v. United States, 362 U.S. 610, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960); United States v. Curcio, 234 F.2d 470 (2d Cir. 1956), reversed on grounds unrelated to the procedures involved, 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957); Wong Gim Ying v. United States, 98 U.S.App.D.C. 23, 231 F.2d 776 (D.C.Cir. 1956).[4] The vast array of statutes and decisions dealing with the contempt powers of this Court, developed from settled usages going back to the common law [5] and reflected in Rule 42, Fed.R.Crim.P. and 18 U.S. C. § 401, are not lightly to be thrust aside. They light the way for the courts, the grand juries and the witnesses alike. They provide stability and firm footing in a very important and delicate area of the law. The awesome command of this subpoena destroys with one thrust all the procedural guides for the courts and the procedural protections for the witnesses. It is difficult to conceive of a more awkward method of conducting a grand jury inquiry than to leave a prospective witness, anxious to assert a legal privilege, outside the precincts of the grand jury

room, and under compulsion not only to make disclosures to Government counsel but, additionally to submit his subpoenaed documents under seal and ex parte to a Court under circumstances which are left undefined. The assertion of privilege against disclosure should be made by the witness before the Grand Jury, as it is traditionally done. By appropriate questions and answers, the nature and extent of the privilege, if any, can be sharpened and defined. Both the Government and the witness can in this way appropriately put forward their respective positions. Then, and only then, is it appropriate, if Government counsel is so advised, to initiate the proceedings for contempt with a view to testing the validity of the assertion of privilege. It may well be that accommodations or agreements can be reached short of contempt proceedings. Indeed, it must not be forgotten that an essential purpose of any grand jury inquiry is the search for the truth. Contempt proceedings which do not represent a real effort to aid in that search are to be avoided, or brought to a quick halt if improvidently begun. See United States v. De Simone, 267 F.2d 741, 747 (2d Cir. 1959).

Furthermore, since the subpoena in question directs the prospective witness to the Court with scant preliminary formalities, the position of the Government poses a vexatious problem of court administration, one of peculiar significance in this large multi-judge court. Not only would the submission of documents to the Court be premature and unrelated to grand jury proceedings except by the fiat of that body's subpoena

4. Although his opinion was not written in the context of a grand jury proceeding, Chief Judge Magruder's discussion of the substantive and procedural aspects of criminal contempts in Goldfine v. United States, 268 F.2d 941 (1st Cir. 1959), cert. denied, 363 U.S. 842, 80 S.Ct. 1608, 4 L.Ed.2d 1727 (1960), is of interest. See also Civil and Criminal Contempt in the Federal Courts, 17 F.R.D. 167–182 (1955).

5. See Brown v. United States, 359 U.S. 41, 51, 79 S.Ct. 539, 3 L.Ed.2d 609 (1959)

and authorities cited in footnotes 12, 13 and 14; Levine v. United States, supra, pp. 615–616 of 362 U.S. p. 1042 of 80 S.Ct., 4 L.Ed.2d 989. See also Frankfurter and Landis, Power of Congress over Procedure in Criminal Contempts in "Inferior" Federal Courts—A Study in Separation of Powers, 37 Harv.L.Rev. 1010 (1924); Blackstone's Commentaries on the Laws of England, 15th Ed. London, 1809, Vol. III, pp. 443–444; Vol. IV, pp. 121–126, 283–288.

power,[6] but the Court would be exposed to a veritable avalanche of books and records which it could not properly evaluate and with only a naked assertion of privilege as the initial guide to the issue presented. Not only is this inconsistent with proper and customary practice but it might unwisely expose the Court to problems which need never arise, as well as problems which could be attenuated and brought within more manageable compass, if the examination of the witness were conducted in the first instance before the grand jury.

■■ What has just been said disposes of the contention put forward by the Government that the subpoena demands merely "that minimal information necessary to enable the grand jury adequately to contest the claim."[7] This argument misconceives the grand jury function. This inquisitorial body is not an adverse party joined in litigation and engaged in pre-trial procedures. The proper time and place to test the assertion of any claim of immunity is before the Court upon a proper record of the formal grand jury proceedings, after the appearance and interrogation of the witness. Nor can it be true, as the Government suggests, that an "impossible burden"[8] will be placed on the Government and the grand jury by the acceptance of defendant's position. The requisite interrogation to establish the withholding of documents, and to lay the groundwork for any assertion of a claim of immunity and for testing its validity, ought not be an unduly heavy burden.

It is, of course, undeniable that the attorney-client privilege here asserted is one which presents many problems and complexities in its application. Wigmore on Evidence, Vol. 8 (1961) § 2290 et seq. But it has a profound significance in our law. Its integrity must not be impaired. Although it may sometimes operate as an obstacle to the investigation of the truth, the policy of protecting the freedom of consultation of legal advisers by their clients is so essentially a part of our legal process that its attrition, let alone its obstruction, is unthinkable.

The motion is granted.

Submit order on notice.

---

6. The subpoena power exercised here was that of the Grand Jury. Government attorneys, in preparing and serving the subpoena in question, were acting as agents of the Grand Jury. Durbin v. United States, 94 U.S.App.D.C. 415, 221 F.2d 520 (D.C.Cir. 1954).

7. Government's reply brief, p. 3.

8. Government's reply brief, p. 4.