**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL LONGSHOREMEN'S AND WAREHOUSEMEN'S UNION, LOCAL NO. 6, Respondent.**

**No. 22822.**

United States Court of Appeals Ninth Circuit.

Dec. 29, 1969.

Warren M. Davison (argued), Corinna Lothar Metcalf, Attys., N.L.R.B., Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B. Dominick L. Manoli, Asst. Gen. Counsel, N.L.R.B., Arnold Ordman, Gen. Counsel, N.L.R.B., Washington, D. C., Roy O. Hoffman, Reg. Dir., N.L.R.B., San Francisco, Cal., for appellant.

Norman Leonard (argued), of Gladstein, Anderson, Leonard, & Sibbett, San Francisco, Cal., for appellee.

Before HAMLEY, BROWNING and CARTER, Circuit Judges.

JAMES M. CARTER, Circuit Judge:

The National Labor Relations Board petitions for enforcement of an order finding that Local 6 of the International Longshoremen's and Warehousemen's Union had violated § 8(b) (1) (A) of the National Labor Relations Act (29 U.S.C. 158(b) (1) (A)).[1] The Board found Local 6 had blocked entrances and exits of the Eureka Chemical Company and had assaulted and threatened employees and supervisors of the Company. Local 6 opposes enforcement of the order.

A bitter labor dispute existed between Local 6 and Eureka Chemical. Eureka initially fired three Local 6 supporters.[2] In retaliation International Union organizer LeRoy King instituted a campaign of coercion against the employees and managers of Eureka. Testimony disclosed physical assaults, threats of violence, and efforts at blocking the normal business functions of the company. Following one assault, state criminal charges were filed against King.

Local 6 raises two points on appeal: (1) The record does not show that Local 6 was responsible for the actions of

---

1. Section 8(b) (1) (A) provides in pertinent part: "It shall be an unfair labor practice for a labor organization or its agents to * * * restrain or coerce employees in the exercise of the rights guaranteed [in § 7 of the Act] * * *."

2. The Board found Eureka guilty of an unfair labor practice in connection with the discharge of the union adherents. Eureka Chemical Company, 165 NLRB No. 7. This court on August 8, 1969 in NLRB v. Eureka Chemical Company, No. 22,821, (unpublished) granted the Board's petition for enforcement, and the decree was entered on September 11, 1969.

King. (2) The hearing should have been postponed until after criminal charges against King were adjudicated in order to give King the opportunity to testify without fear of incriminating himself. We find no merit to these contentions.

■ Adequate evidence supports the findings of the trial examiner and the Board. The record discloses numerous coercive actions by Local 6 against supervisors and employees of Eureka. Further, it is clear that Local 6 was responsible for the actions of LeRoy King. The fact that King worked for the International Union, was paid by it and took orders from it, does not relieve Local 6 from responsibility for his acts. King used the facilities of Local 6 in his organizing efforts for the Local. He accepted authorization cards for Local 6 and visited the Eureka offices to secure recognition for the Local. Finally, King admitted his part in posting a picket line at Eureka's place of business.

■ We likewise find no merit to Local 6's claim that it was deprived of the full benefits of King's testimony by his fear of self incrimination. At the hearing King was asked about his activities on the day he allegedly assaulted Eureka employee Ray Lynch. On the advice of counsel King refused to testify because he believed his testimony could be used against him in a pending state criminal prosecution for his attack on Lynch. The trial examiner held that King had full immunity under the National Labor Relations Act and directed King to answer. King refused. At the close of the case the trial examiner denied a motion to continue the case so that King might testify after the state criminal charge was disposed of. After King was tried on the state charge and acquitted, a motion was made to reopen the proceeding so that King might testify. The motion was denied.

The trial examiner correctly held that King could have testified without fear of having his testimony used against him in the assault proceedings in the state court. § 11(3) of the National Labor Relations Act (29 U.S.C. § 161(3)) extends complete immunity from prosecution to testimony given at a Board hearing. The section provides:

"No person shall be excused from attending and testifying or from producing books, records, correspondence, documents, or other evidence in obedience to the subpoena of the Board, on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture; but no individual shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, except that such individual so testifying shall not be exempt from prosecution and punishment for perjury committed in so testifying."

Local 6 attempts to limit the immunity granted by § 11(3) by comparing the language of the section with the language of immunity statutes considered in Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956) (involving 18 U.S.C. § 3486(c)) and Reina v. United States, 364 U.S. 507, 81 S.Ct. 260, 5 L.Ed.2d 249 (1960) (involving 18 U.S.C. § 1406). *Ullmann* and *Reina* specifically held that the federal immunity statutes considered were binding on state courts. Local 6 argues that the failure of § 11(3) to include the language "nor shall testimony so compelled be used as evidence in any criminal proceeding * * * against him in any court" limits the immunity granted by the statute.

Consideration of the Supreme Court decisions in Brown v. United States, 359 U.S. 41, 79 S.Ct. 539, 3 L.Ed.2d 609 (1959), overruled on other grounds, Harris v. United States, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965) and Murphy v. Waterfront Commission, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964) resolves the issues against Local 6. *Brown*, considered immunity provi-

sions of the Federal Motor Carrier Act (49 U.S.C. 46 and 49 U.S.C. 305(d)) almost identical to § 11(3) and held that the scope of immunity was not limited. *Murphy*, after an extensive discussion of immunity statutes and the self-incrimination privilege, ruled that "the constitutional privilege against self-incrimination protects a state witness against incrimination under federal as well as state law and a federal witness against incrimination under state as well federal law." 378 U.S. 52, 77–78, 84 S.Ct. 1594, 1609. In addition to the clear directives of the Supreme Court, the Sixth Circuit has specifically rejected a claim like that of Local 6, that the absence of the words "in any court" limits the coverage of an immunity clause. Wirtz v. Robb, (6 Cir. 1965) 346 F.2d 192.

The law is clear, that had King testified, the resulting immunity under § 11(3) would have fully protected King in his subsequent state prosecution. Accordingly, the motions made by Local 6 to postpone and to reopen were properly denied.

The order of the Board will be enforced.