### In re CASHMAN.

(District Court, S. D. New York.   January, 1909.)

1. CONTEMPT (§ 60*)—EVIDENCE—REASONABLE DOUBT.
    Proceedings for contempt being criminal in their nature, the contempt must be proven beyond a reasonable doubt.
    [Ed. Note.—For other cases, see Contempt, Cent. Dig. § 185; Dec. Dig. § 60.*]

2. CONTEMPT (§ 60*)—DEFENSES—INSANITY—BURDEN OF PROOF.
    The burden of proof of insanity, pleaded as a defense to a criminal contempt, is on the defendant.
    [Ed. Note.—For other cases, see Contempt, Cent. Dig. § 183; Dec. Dig. § 60.*]

3. CONTEMPT (§ 60*)—DEFENSES—INSANITY—EVIDENCE.
    In a prosecution for criminal contempt, evidence held insufficient to sustain a defense of insanity.
    [Ed. Note.—For other cases, see Contempt, Cent. Dig. § 187; Dec. Dig. § 60.*]

Order to Show Cause why Jacob Cashman should Not be Punished for Contempt.

Julius Henry Cohen, J. N. Rosenberg, and Louis Lichtenberg, for petitioning creditors.

Block & Becher (Mr. Block, of counsel), for Cashman.

HOUGH, District Judge. This proceeding is singular, in that it is not doubted or denied that, if mere words can constitute contempt of court, Cashman is guilty thereof on the face of the record. The petition upon which the order to show cause was granted sets forth at length the more glaring instances of contempt, and to this petition no answer has been filed; nor has any attempt been made to deny the use of the words, or to explain away their effect in any other manner than by asserting that Cashman, at the time he used them, was mentally irresponsible.

Proceedings for contempt being criminal in their nature, it is, of course, necessary for those alleging contempt to prove the commission thereof beyond a reasonable doubt; but in this instance such proof is supplied by defendant's admissions. When, however, it is sought to escape the consequences of contempt by a plea in confession and avoidance, viz., an allegation of insanity, the burden of proof is on the defendant; for every man is presumed to be sane. The testimony or relevant facts regarding Cashman's mental condition may be stated under three heads: First, the nature of his testimony before the commissioner, by which beyond any doubt any sane man committed contempt; second, the evidence of the medical experts who have testified for and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

against defendant; and third, the man's demeanor while testifying before the court and listening to the testimony of others.

First. Undoubtedly Cashman's examination before the commissioner has an important bearing on the issue of his sanity. It is a perfectly fair inquiry to ask (a) whether Cashman remembered anything at all; and (b) if he did so remember anything, was his testimony with regard to that thing coherent, plausibly put, and apparently indicative of mental activity and responsibility? I am compelled to conclude that there was one point concerning which Cashman remembered a great deal, and, indeed, assumed to remember every detail, to wit, his wife's real estate transactions. On this point his testimony is clear and sane—sane, because it is reasonably free from exaggeration and coherently stated. Whether it is entirely accurate or not is immaterial. Slips of memory are not indicative of mental irresponsibility. On every other subject touched on before the commissioner Cashman displayed a complete lack of memory, and (if he be sane) an impudent and incredible denial of memory.

The further inquiry, therefore, becomes entirely fair, whether there be any motive discoverable tending to explain an actual possession of memory regarding the point as to which he testified fully and an apparent absence of memory about every other portion of the inquiry. It is too plain to need explanation that motive exists for a man sane, but ignorant, to admit recollection of what he testified to fully (because it seemed immaterial to the bankrupt proceeding), and to deny memory regarding his partnership business, which any one would recognize as the principal subject of the bankruptcy investigation. It must, therefore, be found that as a matter of fact Cashman has answered those questions which seemed to give the creditors no valuable information, and denied all ability to answer those which were vital to knowledge of the bankrupt's estate. This line of demarcation between what he did know and what he did not know is not persuasive of mental irresponsibility.

Second. The question before the court is not whether Cashman is well or ill in body. It has been shown without contradiction, and I believe it to be true, that the man has suffered for a long time from a frequently acute condition of dyspepsia or gastritis, brought on largely, if not wholly, by his intemperate habits. The question is whether, from this or any other cause, he has been shown to have arrived at a state of mental disease which renders him morally irresponsible for the contempt which by words he manifested toward the power and authority of this court. I shall not enter into a prolonged discussion of the testimony of the four doctors who have appeared before me. Without impugning the integrity or ability of any of them, I am deeply impressed with and entirely convinced by the evidence of Dr. Kirby—not only by his clearness of statement and apparent impartiality, but by the circumstances under which his testimony was given. Cashman was submitted to him for examination. He made an examination, the record of which has been introduced in evidence, and he testified without having stated to any one, so far as this record shows or the court knows, what his conclusions had been from the examinations he had

168 F.—64

made. I am of the opinion that, not only has defendant failed to sustain the burden of proof which is upon him, but that it is positively shown that he does not manifest the physical and mental symptoms indicative of brain disease from which his friends assert that he is suffering.

Third. Throughout the hearing before the court Cashman has exhibited profound apathy and apparent complete carelessness regarding his own fate. When questions were put to him, however, he has answered them coherently and with apparent intelligence. There is nothing in his appearance or demeanor before the court inconsistent with Dr. Mabon's direct evidence that the man is shamming, and if his apparent carelessness of consequences is not assumed there is nothing in such carelessness indicative (according to the balance of evidence) of mental irresponsibility.

Upon the whole, I am convinced that the man is sane, and must take the consequence of his refusal to answer, reasons for which refusal are not far to seek in this bankruptcy record. An order may be entered directing his imprisonment for eight months upon the deposit of the usual expenses, and further directing that he be fined the sum of $750, and, if the same be not paid within the period of imprisonment above directed, that the defendant remain in jail until the further order of the court or the payment of the fine.