**In re GRAND JURY INVESTIGATION OF NEW VRINDABAN, INC., et al.**

Misc. No. 87–323–E.

United States District Court,
N.D. West Virginia,
Elkins Division.

June 7, 1988.

---

**19.** *See* text accompanying notes 10–12, *supra.*   **20.** *See* Respondents' Exhibits E and F.

James B. Lees, Charleston, W.Va., for petitioner.

William A. Kolibash, U.S. Atty., Wheeling, W.Va., for respondent.

## OPINION AND ORDER

MAXWELL, Chief Judge.

The Court has received a Motion to Recuse Chief Judge Robert Earl Maxwell pursuant to the provisions of Title 28, United States Code, Section 455(a).[1] After a careful review of the record in this case, including submitted memoranda of law and supporting affidavits, the Court believes the Motion is ripe for disposition.

To fully address the legal arguments raised by the Government, it is imperative that the Court first detail the background and facts that are interrelated in this case and associated matters.

On or about July 3, 1987, the New Vrindaban Community filed a Motion to Disqualify the United States Attorney for the Northern District of West Virginia and his staff from further investigating the New Vrindaban Community, asking that the U.S. Department of Justice and/or the Court appoint an independent prosecutor to continue the investigation in a fair and impartial manner. That motion initiated the above-styled miscellaneous proceeding in which the Government's motion for recusal is now pending. The Court held an evidentiary hearing on the matter on November 4, 1987. James B. Lees, Jr., has represented the New Vrindaban Community throughout this proceeding.

Just prior to the filing of said Motion, William F. Weld, then Assistant Attorney General of the United States, wrote to the Court, by letter dated April 8, 1987, requesting the convening of a special grand jury, pursuant to 18 U.S.C. § 3331. The

Court responded to this request by letter dated April 14, 1987, questioning whether a special grand jury was indeed needed in light of the fact that a regular grand jury, requested by the United States Attorney, was scheduled to be impanelled in the near future.

By letter dated May 20, 1987, then Assistant Attorney General Weld again communicated with the Court certifying that a special grand jury was needed in the Northern District of West Virginia to investigate organized crime. A formal motion to convene a special grand jury was subsequently filed by the U.S. Attorney and the case was formally docketed. *In Re: Empanelling a Special Grand Jury* (Misc. No. 87–317–E). Once again, the Court responded by letter dated June 10, 1987, questioning whether a special grand jury was needed and noting that a regular grand jury was currently functioning in the District. It was further noted that reducing the number of grand juries was a means of budgetary savings recommended by the Judicial Conference through the Administrative Office of the United States Courts.

By letter dated June 26, 1987, Acting Assistant Attorney General John C. Keeney provided the Court with a third certification that a special grand jury was needed. By Order entered July 31, 1987, the Court took "under advisement the matters raised and suggested in the earlier filed motions and the above mentioned correspondence."

On December 9, 1987, the United States filed a petition for a writ of mandamus with the United States Court of Appeals for the Fourth Circuit, requesting that this Court be directed to impanel a special grand jury pursuant to 18 U.S.C. § 3331. The Fourth Circuit directed that this Court file a response to the petition in accordance with Rule 21(b), Federal Rules of Appellate Procedure.

---

1. It should be noted that the underlying, basic issues in the above-styled matter are contained in the pending Motion to Disqualify the United States Attorney's Office which is presently being considered jointly by Judge Maxwell and Judge Kidd. However, inasmuch as the Government's instant motion pertains only to Judge Maxwell, the undersigned addresses the immediate question and has written the Court's opinion.

After numerous consultations with and advice from the General Counsel of the Administrative Office of the United States Courts and a studied review of the allegations of the Petition and provisions of the Fourth Circuit Court of Appeals' Local Rule 21, James B. Lees was requested to respond to the Petition for Mandamus, as directed by order of the Fourth Circuit. The response, as filed, submitted that 18 U.S.C. § 3331 creates an unconstitutional delegation of authority, or, in the alternative, if the Section were determined to be constitutional, that the District Court's inherent authority, in light of the record of continuing regular grand juries in the District, extends to review of the validity and necessity of impanelling a special grand jury. Possible ambiguity of the statutory language, as it was sought to be applied in this instance, was also a matter of concern.

Ultimately, the Fourth Circuit found the statute constitutional and unambiguous in its stated purpose and concluded that the proper action for the district court when presented with a certification of need pursuant to 18 U.S.C. § 3331(a) is to summon the special grand jury. The Court noted:

> Although a sitting grand jury is an appendage of the court under whose supervision it is summoned, *Brown v. United States*, 359 U.S. 41, 49 [79 S.Ct. 539, 545, 3 L.Ed.2d 609] (1959), the authority to call the grand jury in the first instance is not within the inherent power of the district court. Simply stated, a grand jury is a "creature of statute." *In re Mills*, 135 U.S. 263 [10 S.Ct. 762, 34 L.Ed. 107] (1890). The authority of the court is thus subject to the specific limitation of rules and statutes. *See e.g. United States v. Christian*, 660 F.2d 892 (3d Cir.1981).
>
> By enacting 18 U.S.C. § 3331(a), Congress has determined that special grand juries shall be empanelled whenever certain specified conditions are met. Contrary to respondent's view, we do not find the statute's certification process to be an unconstitutional delegation of authority to the executive branch. Rather, the procedure is simply Congress' chosen method of implementing its will. No undue discretion is placed in the hands of the executive branch and no intrusion into inherently judicial prerogatives is contemplated.

In Re: *IN RE EMPANELLING A SPECIAL GRAND JURY*, 842 F.2d 1290 (4th Cir.1988).

On April 27, 1988, this Court directed the Government to advise the Court of its anticipated usage of the special grand jury. Pursuant to the Court's Order, the United States Attorney advised the Court that it required the services of the special grand jury for two sessions of three days' duration and thereafter as further sessions are needed, as determined by the grand jurors. By Order entered May 11, 1988, this Court directed the Clerk of Court to summon potential jurors from which a special grand jury would be impanelled, to convene on June 8, through June 10, 1988, and July 6 through July 8, 1988.

On March 24, 1988, the United States Attorney for the Northern District of West Virginia filed the Motion to Recuse now under consideration by the Court. In support of its Motion, the Government essentially asserts that this Court has created a conflict of interest by requesting that James B. Lees prepare the mandamus response directed by the United States Court of Appeals for the Fourth Circuit, while at the same time presiding over the above-styled matter in which James B. Lees represents one of the parties in interest. The Government contends that Mr. Lees' appearance at the Fourth Circuit creates a perception of partiality. The Government further expresses the view that Mr. Lees' participation affords him the opportunity to prevent the impanelling of a grand jury to investigate his clients. The Government places great emphasis on newspaper articles and editorials and further alleges that the Court has issued a proclamation in opposition to a special grand jury, thus destroying the air of impartiality.

The Court finds that the Government's motion fails to take into account the substance of the mandamus representation, the existence of the Fourth Circuit's Local

Rule 21, and many other circumstances involved in the two cases.

■ In determining under § 455(a) whether his impartiality might reasonably be questioned, a judge is not bound to accept the allegations set forth in the affidavits as true. He is entitled to take into consideration all of the circumstances which might reflect on his impartiality. *In Re Beard*, 811 F.2d 818, 827 (4th Cir.1987); *In Re: Federal Deposit Insurance Corporation*, 835 F.2d 874 (4th Cir.1987).

■ Accordingly, in the matter under consideration, although the Court questioned the necessity for impanelling a *special* grand jury in addition to the *regular* grand juries functioning in the District, it has neither expressed an opinion about nor discussed the necessity of either a *special* or *regular* grand jury investigation concerning the New Vrindaban Community or any other substantive work of grand juries in the District. Specifically, the Court expressed concern over the *costs* of impanelling a special grand jury, but has expressed no opinion regarding the substantive issues in the Government disqualification case or any other proceeding involving the New Vrindaban Community. It was never the specific subject matter to be presented to the special grand jury to which the Court objected, as above noted. To the contrary, it was the method in which the subject matter would be presented, *i.e.*, the use of special versus regular grand jury. The Court placed considerable emphasis on the fact that the Government had never justified the *need* for a special grand jury, over and above the regular grand jury that was convened in the District at that time and is now functioning.

■ As correctly argued by the Government, in accordance with 28 U.S.C. § 455(a), a judge must recuse himself if a reasonable man might question his impartiality under all circumstances. *Rice v. McKenzie*, 581 F.2d 1114 (4th Cir.1978). The Government's affidavits suggest that a question of impartiality has arisen; however, that question, as is clearly demonstrated by the newspaper clippings attached in support of the government's affi-

davits, is a product of government representations and innuendo that are not grounded in fact and accordingly cannot require disqualification. *In Re United States*, 666 F.2d 690, 695–698 (1st Cir.1981). The Government's heavy reliance on newspaper articles and editorials to support its position herein is suspect inasmuch as it would appear that the United States Attorney's office is the source of much of this publicity and, accordingly, has manufactured and marketed its asserted appearance of partiality. Such a circuitous route must be recognized as an attempt at manipulation of the media and, as such, does not justify recusal.

This Court finds that a reasonable person, in possession of all the facts, would not come to the conclusion that the subject of the recusal motion is partial. If the Government's motion were granted under such meager circumstances as those presented herein, then the United States Attorney's office could conveniently create unwarranted implications of impropriety any time it desired to engage in forum shopping. Obviously, this would grant the Government impermissible veto power over random case assignment and could next lead to abuse of current recusal provisions.

As mentioned, a review of the facts reveals that the Government's instant Motion is quite sensationalized. The Court's concern for ensuring the efficient, effective, and economical utilization of grand juries in the District has no bearing on its hearing the motion to disqualify the United States Attorney's office. At all times, the Court's concern was made quite clear:

> My somewhat lengthy narrative of the matters involving two separate grand jury entities is related in this correspondence in order that I might have the benefit of your thoughts and suggestions with regard to the ongoing grand jury and the request for a special grand jury. The ultimate inquiry is whether there is a substantial need for a special grand jury while a regular grand jury is functioning in the district and will be available until November 11, 1987, under our Jury Plan.

The inquiry is not for the purpose of delay or to in any way thwart or minimize the legitimate functions of the Department of Justice. However, under the supervision and direction of the Judicial Conference of the United States, the Administrative Office of United States Courts has urged district courts, in view of the Balanced Budget and Emergency Deficit Control Act of 1985 to administer expenditures in a prudent and careful manner ...

Letter from Robert E. Maxwell to Honorable William F. Weld (dated June 10, 1987 at p. 3).

The Government's conclusions from these statements, which are supported merely by the groundless insinuations that the Court had some motive other than the preservation of the effective and efficient utilization of grand juries in the District, are not supported by even a scintilla of evidence.

Further, although the Government's attorney contends that the employment of Mr. Lees created a conflict of interest, it must be emphasized that the representation by Mr. Lees involved a *procedural,* not a *substantive* matter. The issue was strictly whether the Court has any discretion when presented with a request pursuant to 18 U.S.C. § 3331. Moreover, the Government disregards the advice this Court received from the Administrative Office when presented with the Fourth Circuit's directive to respond to the mandamus petition and ignores the Fourth Circuit's Local Rule 21. The Court consulted extensively with the General Counsel of the Administrative Office before asking Mr. Lees to respond to the petition. The authorization and appropriation for pro forma counsel was received from the Administrative Office and is fully documented.

The realm of Mr. Lees' representation is also important. The rationale and justification for retaining Mr. Lees is thoroughly discussed in a January 11, 1988 letter from the Court to Mr. Lees, a copy of which was supplied to the Government. It is clear from that letter, as well as the record of the Fourth Circuit proceeding, that the representation by Mr. Lees focused on the constitutional parameters of 18 U.S.C. § 3331. It is equally clear that the subject matter to be presented to the special grand jury was never at issue in the case nor the focus of the Court's constitutional inquiry. It should also be noted that despite the present suggestion in the Government's affidavit that it was improper for Mr. Lees to respond to the mandamus petition, the Government failed to raise this issue before the Fourth Circuit at the time it was pending in that forum.

Further, in selecting pro forma counsel, the Court is guided and directed by Local Rule 21 of the United States Court of Appeals for the Fourth Circuit. Local Rule 21 reads:

Rule 21. Petitions for Special Writs. A petition for a writ of mandamus or writ of prohibition shall not bear the name of the district judge, but shall be entitled simply, In re _____, Petitioner. To the extent that relief is requested of a particular judge, unless otherwise ordered, the judge shall be represented pro forma by counsel for the party opposing the relief, who shall appear in the name of the party and not that of the judge.

As indicated in the January 11, 1988 letter, the only apparent opposing party was the New Vrindaban Community; therefore, Mr. Lees was asked to respond to the petition in compliance with Local Rule 21:

... It is my understanding that under Local Rule 21 of the Fourth Circuit, it is provided that to the extent that relief is requested of a particular judge, unless otherwise ordered, the judge shall be represented pro forma by counsel of the party opposing the relief ...

...In formalizing the unique matter of representation of the nominal respondent in this pending Petition for Writ of Mandamus before the Fourth Circuit, while it is true that there are "no opposing counsel to represent" the Chief Judge of the Northern District in these proceedings before the Fourth Circuit, the Petition of the Justice Department at least infers that one group, namely, the Hare Krishnas sect, may be investigated by a Spe-

cial Grand Jury under provisions of the *Organized Crime Control Act of 1970* ...

... Not being advised that any other counsel have had contact by way of representing the Hare Krishnas sect in Marshall County, or any other region of the world, it seemed logical and reasonable that you could properly be considered, at least to some degree, as an attorney representing a "party opposing the relief" sought by the Department of Justice. Although the "opposing counsel" position, considering the meager allegations of the record here and before the Fourth Circuit, is unclear, it seems that you are closer to being "opposing counsel", in the traditional sense of that term, than any other attorney before the Bar of the Court ...

Letter from Robert E. Maxwell to Mr. James B. Lees, Jr., (dated January 11, 1988).

Certainly, the Fourth Circuit did not promulgate Rule 21 with the intention that a judge who has been represented *pro forma* in a given case by the attorney who opposes the relief sought by the Petition for the Special Writ, would then subsequently recuse himself from that case. Here, the matter is even further removed: the recusal motion has been filed in an entirely different docketed case.

The Government's Memorandum and supporting affidavits distort the structure of the proceedings before this Court and the Fourth Circuit Court of Appeals and accordingly mischaracterize the facts as they are duly recorded. The constitutional issues raised and suggested by this Court regarding the impanelling of a special grand jury had no bearing on the subject matter to be presented to a special grand jury.

The overall implication of the Motion to Recuse, as presented in its entirety, suggests that the Court's use of Mr. Lees is perhaps only a pretext for some other vaguely suggested, although unnamed, extrajudicial motive regarding the New Vrindaban Community and/or the subject-matter to come before the Special Grand Jury.

Such speculation remains unsupported and is thus unpersuasive. If the Fourth Circuit had denied the Government's petition for a writ of mandamus, the United States Attorney's office presumably would have proceeded to present its evidence regarding the New Vrindaban Community, if such is in fact a target for special grand jury investigation, to a regular grand jury, as it has done in the past.

In summary, the Court's hesitancy to call a special grand jury focused on the necessity of a *special* grand jury versus utilization of a *regular* grand jury. The inquiry ended there, as the record fully reflects. Any "appearance of partiality" has been created by the United States Attorney's Office by its public implication that the Court was resisting the investigation of the New Vrindaban Community, rather than the Court's true objective: substantial constitutional questions; efficient and effective utilization of grand juries in the District; economic justification for a *special* grand jury, in light of representations made by the United States Attorney's Office in open court on December 10, 1987, the directives received from the Administrative Office regarding the efficient administration of the jury system, and copies of memoranda from the Department of Justice urging United States Attorneys to reevaluate their use of grand juries; and, the inefficient utilization of grand jury sessions which has been apparent in this District of late.

Inasmuch as it has not been demonstrated that the Court's impartiality might reasonably be questioned, the Government's Motion is hereby DENIED.